FILED
2013 Oct-23 PM 08:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

EZEIKIEL NEVITT,

Plaintiff

v.

UNITED STATES STEEL CORPORATION,

Defendant

Case No. 2:12-mc-2150

Honorable Abdul K. Kallon

**BRIEF IN SUPPORT OF UNITED STATES STEEL CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendant United States Steel Corporation ("U.S. Steel") hereby submits this Brief in Support of its Motion for Summary Judgment. There is no genuine issue of material fact regarding either of plaintiff's claims in this case, and U.S. Steel therefore is entitled to a judgment as a matter of law. U.S. Steel relies upon the documentary evidence included in its Evidentiary Submission in Support of Motion for Summary Judgment filed contemporaneously herewith.

# CONTENTS

**I. NARRATIVE STATEMENT OF UNDISPUTED FACTS**................3

**II. ARGUMENT**...........................................................11

A. Plaintiff's "Regarded As" Claim Fails as a Matter of Law Because He Cannot Prove any of the Prima Facie Elements of Disability Discrimination...........................................................11

1. Mr. Nevitt's Back Injury Was Transitory and Minor, and His 'Regarded As Claim of Disability Therefore Is Barred Under 42 U.S.C.§12102(3)(B)............................................12

2. Mr. Nevitt's "Regarded As" Claim Fails Because He Was Not Qualified to Perform the Heavy Manual Labor of a Utility Technician...........................................................17

3. Mr. Nevitt's Cannot Show that U.S. Steel's Decision Not to Hire Him Was Discriminatory..................................20

B. Mr. Nevitt Cannot Show That U.S. Steel's Reasons For Not Hiring Him Were Pretextual...............................................20

C. Mr. Nevitt's Claim that U.S. Steel Violated the ADA's Medical Examination and Inquiry Provisions Is Procedurally and Substantively Defective...........................................................22

1. Mr. Nevitt Failed to File Prerequisite EEOC Charge........... 22

2. There Is No Evidence That U.S. Steel Did Not Conduct A Proper Medical Examination and Inquiry........................23

**III. CONCLUSION**...........................................................25

## I. NARRATIVE STATEMENT OF UNDISPUTED FACTS

### Mr. Nevitt's Prior Employment

1. On January 3, 2011, plaintiff, Ezeikiel Nevitt (hereinafter "Mr. Nevitt" or "plaintiff") was injured during the course of his work as Utility Worker for his previous employer, Cascades Sonoco. Ex. A pp. 44 l. 3-13, 65 l. 18-23, 66 l. 1-23, 67 l. 1-23, 68 l. 1-17 ; Ex. 19 pp. 1-3 to Ex. A. sentence re nature and severity of injury deleted. Mr. Nevitt was examined at a hospital emergency room, and released the same day. *Id.* at 68 l. 11-17.

2. According to Mr. Nevitt, the Utility Worker position at Cascades Sonoco "consisted of everything in the plant from shipping to machine operator." *Id.* at 44 l. 5-7. Mr. Nevitt considered the Utility Worker position at Cascades Sonoco to be equivalent to the Utility Person position he later applied for at U.S. Steel. *Id.* at 189 l. 18-23, 190 l. 1-6. According to Mr. Nevitt, while one company produced paper and the other produced metal, "plant work is plant work." *Id.*

3. Following the accident, Mr. Nevitt was under the care of Robert Poczatek, M.D. (hereinafter "Dr. Poczatek"). *Id.* at 79 l. 14-23, 80 l. 1-20. Dr. Poczatek placed Mr. Nevitt under work restrictions for his back injury, and Mr. Nevitt continued his job at Cascades Sonoco. *Id.* at 76 l. 19-21, 124 l. 5-21. Mr.

Nevitt does not recall missing any work as a result of the January 3, 2011accident. *Id.* at 75 l. 19-12, 76 l. 1-6.

4. Over time, Mr. Nevitt became dissatisfied with Dr. Poczatek's care. *Id.* at 144 l. 4-23, 145 l. 1-12, 150 l. 7-17. He requested that Cascades Sonoco's workers compensation insurer allow him to choose a new doctor from a panel of physicians. *Id.* at 144 l. 4-23, 148 l. 20-23, 149 l. 1-22; Ex. 2 p. 20 and Ex. 3 to Ex. A. On or about May 19, 2012, Mr. Nevitt selected Andrew Cordover, M.D. (hereinafter "Dr. Cordover") at Andrews Sports Medicine as his treating physician in place of Dr. Poczatek. Ex. 3 to Ex. A.

5. On May 27, 2011, Dr. Cordover examined Mr. Nevitt. Ex. A p. 153 l. 1-10; Ex. 4 to Ex. B. Dr. Cordover did not place any restrictions and allowed Mr. Nevitt to return to work without limitation. Amended Complaint ¶¶ 20, 23; Ex. 4 to Ex. B. Mr. Nevitt alleges in his Amended Complaint that at that time "he was medically released without any restrictions." *Id.* at ¶ 15. He did not return to see Dr. Cordover or any other physician or medical care provider concerning his back following the visit to Dr. Cordover on May 27, 2011. Ex. A pp. 92 l. 2-6, 153 l. 7-10, 182 l. 11-23, 183 l. 1-18.

6. Mr. Nevitt testified that his "back problems stopped in June [2011] sometime" and that as of that time he felt healed and had no further recurrence of pain. *Id.* at 192 l. 19-23.

7. On August 4, 2011, Mr. Nevitt and Cascades Sonoco entered into a lump sum settlement of Mr. Nevitt's workers compensation claim related to the January 3, 2011 accident. *Id.* at 221 l. 1-20; Ex. 19 to Ex. A. As part of the settlement, Mr. Nevitt agreed to resign and his employment with Cascades Sonoco was terminated. Ex. A pp. 42 l. 6-23, 43 l. 1-10; Ex. 20 to Ex. A.

**Plaintiff's Application for Employment at U.S. Steel**

8. On August 8, 2011, four days after Mr. Nevitt's settlement of his workers compensation claim and resignation from Cascades Sonoco, plaintiff completed a written application for employment at U.S. Steel as a Utility Technician. Ex. A p. 223 l. 9-23; Ex. 9 to Ex. A.

9. Mr. Nevitt was one of six hundred and four applicants for thirty-five available Utility Person positions. Ex. C ¶ 3.

10. U.S. Steel followed its standard protocol. After submission of the written application, Mr. Nevitt participated in an 'in person' interview with U.S. Steel. Ex. A pp. 190 l. 7-23, 191 l. 1-23, 192 l. 1-14. Following the interview, U.S. Steel made Mr. Nevitt a conditional offer of employment, contingent on his passing a pre-employment fitness for duty examination, which included a physical examination and gathering of information relating to Mr. Nevitt's medical history. *Id.* at 192 l. 1-14; Ex. G p. 7 l. 4-8; Ex. H pp. 16 l. 14-23, 17 l. 1-13, 20 l. 11-22, 21 l. 1-23, 23 l. 2-13.

11. In the course of Mr. Nevitt's employment physical examination on August 24, 2011, he reported to U.S. Steel's nurse-examiner that he had suffered a back injury during his prior employment. Ex. H p. 30 l. 9-17. Thus, U.S. Steel requested that Mr. Nevitt provide further medical information. Ex. A pp. 163 l. 1-12, 173 l. 6-14, 176 l. 1-6; Ex. 12 to Ex. A.

12. Mr. Nevitt retrieved from his car a two-page May 12, 2011 evaluation from Dr. Poczatek and presented it to U.S. Steel that same day. Ex A. p. 163 l. 1-23, 164 l. 1-23, 165 l. 1-7; Ex. 5 to Ex. B. This medical record that Mr. Nevitt provided to U.S. Steel indicated that he was able to work at Cascades Sonoco with certain restrictions. Ex. 5 to Ex B.

13. Two days later, on August 26, 2011, U.S. Steel wrote to Mr. Nevitt again requesting that he provide medical records indicating his physical condition. Ex A p. 176 l. 1-6; Ex. 12 to Ex. A.

14. Sometime within the next several days, Mr. Nevitt also presented to U.S. Steel a one-page May 27, 2011 medical record from Dr. Cordover, the worker's compensation panel doctor selected by Mr. Nevitt to replace Dr. Poczatek. Ex. A pp.144 l. 4-21, 148 l. 4-23, 149 l. 1-22 , 167 l. 10-23, 168 l. 1-11; Ex. 2 pp. 20-22 and Ex. 3 to Ex. A.

15. The three pages of medical records from Drs. Poczatek and Cordover were the entirety of the medical records provided to U.S. Steel by Mr. Nevitt. Ex. A pp. 187 l. 23, 188 l. 1-12.

16. U.S. Steel's plant physician, Cheryl Szabo, M.D. (hereinafter "Dr. Szabo") reviewed the information contained in the May 12, 2011 Dr. Poczatek medical record and the May 27, 2011 Dr. Cordover medical record provided by Mr. Nevitt. Ex. B pp. 16 l. 6-12, 58 l. 4-13. Based on those records, she placed him under the following restrictions: lifting restriction of twenty pounds, a ten-minute break every two hours and no repetitive movements of the back. *Id.* at 129 l. 5-23, 130 l. 1-20.

17. Specifically, Dr. Szabo placed the twenty-pound lifting and no repetitive movement restrictions because Dr. Poczatek had noted that Mr. Nevitt experienced pain "with twisting as well as frequent forward flexion" and had problems with "numbness" and "lumbar radiculopathy." *Id.* at 92 l. 20-22, 129 l. 22-23, 130 l. 1-6.

18. Dr. Szabo placed the ten-minute break restriction because Dr. Poczatek had specifically recommended such breaks. *Id.* at 130 l. 12-17. Dr. Szabo further noted that Dr. Cordover's record indicated that Mr. Nevitt complained of back pain and that he had undergone a functional capacity evaluation that was "invalid." *Id.* at 146 l. 7-13.

19. Although Dr. Szabo noted that Dr. Cordover's record included a reference to "no restrictions," she decided that the roughly contemporaneous medical records from Drs. Poczatek and Cordover should be considered together. *Id.* at 62 l. 10-13, 76 l. 4-22. It also appeared to Dr. Szabo, at the time that she was reviewing the records, that Dr. Poczatek was Mr. Nevitt's treating physician, while Dr. Cordover was a one-time visit. *Id.* at 76 l. 12-22.

20. As part of her job, Dr. Szabo tries to assure that applicants can work safely, that they are not a safety danger or hazard to themselves or others, and that they are fit for the job for which they are applying. *Id.* at 38 l. 21-23, 39 l. 1-2.

21. Dr. Szabo typically relies on her knowledge of the applicant, the particulars and nature of the job, medical history, as well as her experience at U.S. Steel which stretches back to 1995. *Id.* at 8 l. 5-13, 39 l. 4-6.

22. Dr. Szabo communicated the restrictions for Mr. Nevitt to U.S. Steel's Human Resources personnel. Ex. G p. 26 l. 3-8. Jodi Watson, Director of Human Resources at Fairfield Works, then contacted supervisors for the Utility Person position and inquired as to whether Mr. Nevitt's restrictions could be accommodated. *Id.* at 6 l. 8-10, 10 l. 3-5, 26 l. 3-8, 33 l. 10-15.

23. U.S. Steel's area manager of steelmaking, Roy Reed, told Jodi Watson a required ten minute break every two hours could not be accommodated because

there is "a very short time to test and take a temperature for chemistry on the furnace." Ex. D p. 7 l. 10-23.

24. Likewise, another area manager, David Thompson, stated that the scheduled breaks required every two hours could not be accommodated because "the timing of the job comes into it." Ex. E p. 11 l. 4-23.

25. In the Utility Person position there are no set breaks and those employees do not even have a regularly scheduled lunch time as a result. Ex. D p. 8 l. 3-23.

26. Additionally, the Utility Person job requires lifting between eighty and one hundred pounds, with a lot of bending, stooping, crawling, lifting, shoveling, and repetitive back movements. Ex. B p. 43 l. 11-15.

27. As part of his normal function, a Utility Person must be able to lift fifty pound bundles to throw into a chute, in a repetitive motion of "grabbing and throwing" that has to be done "fast" and "once per cycle." Ex. D pp. 10 l. 7-17, 14 l. 2-8.

28. There are also other physically demanding aspects of the Utility Person job, such as putting "bulk stock up which would [sic] involved operating some mobile equipment; forklifts, bobcats, a loader, like a small articulating loader, a lot of shoveling by hand, raking at times, sweeping, a process called gunning, applying gunite material. The utility man has to drag probably a three-

inch hose from a machine that mixes this material with water. . . . a concrete refractory-type material. [He] would drag this to the furnace, throw the equipment over his shoulder and gun in a fanning motion." *Id.* at 12 l. 6-19.

29. The printed requirements for U.S. Steel's Utility Person job state many of the physical requirements, including the ability to exert significant muscle force to lift, push, pull, or carry objects; the ability to use your abdominal and lower back muscles to support part of the body repeatedly or continuously over time, including bending and stooping; and the ability to exert muscle force at intervals throughout a work shift, involving muscle endurance and resistance to muscle fatigue. Ex. 6 to Ex A.

30. Dr. Szabo believed that Mr. Nevitt would be a danger to himself and to others, if he came to work in the Utility Person position without restrictions. Ex. B p. 92 l. 13-22.

31. Accordingly, Mr. Nevitt's contingent offer of employment was withdrawn on or about September 15, 2011. Ex. F pp. 6 l. 6-9, 7 l. 1-10; Ex. 14 p. 1 to Ex. A.

32. On September 22, 2011, U.S. Steel sent Plaintiff an email inviting him to apply for another position. Ex. A p. 205 l. 9-23, 206 l. 1-3.

**Mr. Nevitt's Claims**

33. Mr. Nevitt filed this action on June 13, 2012 asserting claims pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*., as amended by the ADA Amendments Act of 2008, Pub.L. 110-325, § 1, Sept. 25, 2008, 122 Stat. 3553 (hereinafter "ADA"). Specifically, Mr. Nevitt alleges that U.S. Steel improperly regarded him as disabled when in fact "Plaintiff could perform the essential functions of the Utility Person position without any accommodation." Amended Complaint ¶¶ 34-36. Plaintiff denies that he was ever disabled. Ex. A pp. 258 l. 20-23, 259 l. 1-13.

34. Plaintiff also contends that U.S. Steel violated the ADA's Medical Examination and Inquiry Provisions because "[t]he medical information obtained by [U.S. Steel] was improperly used to screen out plaintiff, and the criteria applied by [U.S. Steel] was not job-related and consistent with business necessity. Amended Complaint ¶ 43.

## II. ARGUMENT

### A. Plaintiff's 'Regarded As' Claim Fails as a Matter of Law Because He Cannot Prove Any of the Prima Facie Elements of Disability Discrimination

In order to establish a prima facie case of disability discrimination under the ADA, Mr. Nevitt must show that (1) he has a disability; (2) he is otherwise qualified to do the job; *and* (3) he was subjected to unlawful discrimination

because of his disability. *Wright v. Hyundai Motor Mfg. Alabama, LLC*, 2012 W.L. 2814153, at * 4 (M.D. Ala.). In this case, Mr. Nevitt can prove none of the requisite elements of a prima facie case. The failure of just one of the prima facie elements necessarily renders all other facts immaterial. *Celotex Corp v. Catrett,* 477 U.S. 317, 322-323, 106 S.Ct. 2548 (1986).

**1. Mr. Nevitt's Back Injury Was Transitory and Minor, and His 'Regarded As' Claim of Disability Therefore Is Barred Under 42 U.S.C. § 12102(3)(B)**

A disability within the meaning of the ADA includes:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment (as described in paragraph (3)).

42 U.S.C. § 12102(1) (2009).

Mr. Nevitt does not claim that he actually had a physical or mental impairment. Ex. A pp. 258 l. 20-23, 259 l. 1-13; Amended Complaint ¶¶ 34-36. Rather, he claims only that U.S. Steel regarded him as disabled because of a previous back injury. *Id.* Accordingly, Mr. Nevitt's claim is to be analyzed exclusively under 42 U.S.C. § 12102(1)(C).

For purpose of subsection (C), supra, 42 U.S.C. § 12102 (3) establishes that

> (A) An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.
>
> *(B) Paragraph 1(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with actual or expected duration of 6 months or less.*

(emphasis added).

There is no question that Mr. Nevitt's back injury was of an actual duration of less than 6 months, and thus is a transitory impairment. Mr. Nevitt injured his back as a result of a workplace accident on January 3, 2011. Ex. A pp. 44 l. 3-13, 65 l. 18-23, 66 l. 1-23, 67 l. 1-23, 68 l. 1-17; Ex. 19 p. 1 to Ex. A. On May 27, 2011, Dr. Cordover released Mr. Nevitt to return to work without restrictions, ("I do not see any restrictions necessary for him at this time"), and Mr. Nevitt in fact went back to his job at full duty. Ex. A pp. 91 l. 9-23, 92 l. 1; Ex. 4 to Ex. B. [1] The Amended Complaint confirms that, following Mr. Nevitt's visit to Dr. Cordover on May 27, 2011, he was "medically released without any restrictions." Amended

---

[1] As Mr. Nevitt put it in his deposition testimony, he went back to working "full active" following his visit to Dr. Cordover. Ex. A pp. 91 l. 16-17.

Complaint 15.[2] Mr. Nevitt's back condition was also minor in nature. He missed no work following the accident in January of 2011. In May of 2011, he returned to his normal job at full duty. Most critically, Mr. Nevitt has admitted in his deposition testimony that his back problems and pain ended in June of 2011:

> Q: Do you recall asking any questions about what you were expected to do as a utility technician for U.S. Steel?
>
> A: No, Sir.
>
> Q: Did you have any thought that you, given your prior back problems, wouldn't be able to perform that job?
>
> A: Like I said, the back problems stopped in June sometime. And this offer – this offer here was like in August.
>
> Q: So, it was two months later.
>
> A: Yeah, like – like I said, I was healthy. I didn't have any problems.
>
> Q: Had there been any recurrence at all of pain from your back between June and August?
>
> A: No.
>
> Q: Now, if the pain was completely gone, I assume that you were – you felt healed? You felt good?
>
> A: Yes.

Ex. A pp. 192 l. 15-23, 193 l. 1-13.

Courts have held consistently that the 'transitory and minor' test is an objective one. *See, e.g., Butler v. Advance / Newhouse Partnership*, 2013 W.L.

---

[2] Mr. Nevitt was never again treated for his back injury by Dr. Cordover or any other medical provider after Dr. Cordover's examination on May 27, 2011. Ex. A pp. 92 l. 2-8, 153 l. 7-16, 182 l. 11-16, 183 l. 3-18.

1233002, at * 8 (M.D. Fl.) (whether an impairment is 'transitory and minor' is to be determined objectively rather than subjectively)(citations omitted); *in accord Lewis v. Florida Default Law Group*, 2011 W.L. 4527456, at * 6 (M.D. Fl.); *White v. Interstate Distributor Co*., 2011 W.L. 3677976, at * 4 (6th Cir.) (ADA explicitly states that 'regarded as' definition shall not apply to impairments that are transitory and minor); *Zurenda v. Cardiology Associates, Inc.*, 2012 W.L. 1801740 (N.D.N.Y.) (objective test recognized by EEOC regulation, 29 C.F.R. § 1630.15(f)).

*Dugay v. Complete Skycap Services, Inc.*, 2011 W.L. 3159171 (D. Ariz.) is particularly instructive. Mr. Dugay was employed as an airport skycap by defendant CSSI. On May 29, 2009, he was injured in an automobile accident. *Id.* at *1. On September 2, 2009, slightly more than 3 months following his injury, Mr. Dugay presented his employer with a full release from his doctor. *Id.* Because CSSI told him that there was no work then available, On September 11, 2009, plaintiff filed an EEOC charge of disability discrimination. In a subsequent lawsuit, Mr. Dugay alleged that CSSI regarded him as disabled and unable to perform his job. *Id.* at *4.

Finding that the actual duration of Mr. Dugay's impairment lasted only 3 months, the district court granted the employer's motion to dismiss plaintiff's 'regarded as' disability claim. The court held expressly that Mr. Dugay's 'regarded

as' disability claim fell within the absolute statutory bar for transitory and minor impairments of six months or less:

> … While it is true that a 'regarded as' impairment need not limit a major life activity, 42 U.S.C. § 12102(3)(A), a 'regarded as' impairment that is 'transitory and minor' – defined as an impairment with an actual or expected duration of 6 months or less' – is not a covered disability following the ADA Amendments Act of 2008. 42 U.S.C. § 12102(3)(B) … Under the ADA, Plaintiff cannot state a legal claim for a 'regarded as' disability when his impairment falls within the statutory exception of 'transitory and minor' impairments.' Further, even if plaintiff had alleged (which he did not) that CSSI regarded him as disabled for a longer period, the statute provides an absolute bar to disability status for 'regarded as' impairments of six months or less, regardless of employer perceptions. 42 U.S.C § 12102(3). While this Court does not discount the fact that Plaintiff suffered from a physical impairment following his accident, *Congress has, in its legislative discretion, chosen to limit the scope of covered disabilities from which legal action might lie.*

*Id.* (emphasis added).

As in *Dugay*, Mr. Nevitt's impairment was less than six months in duration and, as established by Mr. Nevitt's medical records and his admitted quick and complete recovery from the injury, minor in nature. [3] Accordingly, his disability

[3] While "transitory" is defined in the statute at 42 U.S.C. § 12102(3) and further explained by 29 C.F.R. § 1630.15(f), neither the statute nor any regulation defines "minor." A number of courts have combined the 'transitory and minor,' inferring that a transitory impairment (less than 6 months) is ipso facto a minor impairment. *See, e.g., Selkow v. 7-Eleven, Inc.*, 2012 W.L. 2054872, at *15 (M.D. Fla.); *Cobb v. Florence City Bd. of Education*, 2013 W.L. 5295777, at * 10 (N.D. Ala.); *Dugay, supra*. Other courts have construed the words 'transitory *and* minor' strictly, and have analyzed the 'regarded as' impairment to determine if the impairment is both

claim falls squarely within the statutory exception barring 'regarded as' claims. Mr. Nevitt cannot pursue his claim, and U.S. Steel is entitled to summary judgment in its favor.

**2. Mr. Nevitt's "Regarded As" Claim Fails Because He Was Not Qualified to Perform the Heavy Manual Labor of a Utility Technician**

In order to prevail on his 'regarded as' claim, Mr. Nevitt also must prove by a preponderance of the evidence that he is 'otherwise qualified' to perform the essential functions of the Utility Technician job in question. *Wurzel v. Whirlpool Corp.*, 2012 W.L. 1449683, at * 11 (6th Cir.). A disabled individual cannot be qualified for a specific job or jobs, if he or she poses a "direct threat" to his or her own health or safety or the health and safety of others, which threat cannot be eliminated by reasonable accommodation. 42 U.S.C. § 12111(3); *Pinckney v. Potter*, 186 Fed.Appx. 919, 925 (11th Cir. 2006). [4] The ADA defines a 'direct threat' as meaning a "significant risk to the health or safety of others that cannot be

---

transitory and minor. *See, e.g., Butler v. Advance / Newhouse Partnership*, 2013 W.L. 1233002, at * 8 (M.D. Fl.); *Wallner v. MHV Sonics, Inc.*, 2011 W.L. 5358749, at * 5 (M.D. Fla.); *Bush v. Donahoe*, 2013 W.L. 4045785, at * 16-17 (E.D. Pa.). Under either approach, Mr. Nevitt's back injury clearly and most reasonably falls within the statutory exception excluding his claimed disability as set forth in 42 U.S.C. § 12102(3).

[4] The record reflects U.S. Steel's good faith effort to accommodate Mr. Nevitt's restrictions to obviate the threat his physical condition posed to himself and his co-workers. However, it must be noted that an employer is not required to provide an accommodation, when the employee alleges only "regarded as" disability, as Mr. Nevitt does in this instance. 42 U.S.C. § 12201(h); 29 C.F.R. § 1630.9(e) (2011). U.S. Steel addresses its accommodation efforts simply to show that its decision not to hire Mr. Nevitt was made in accordance with established and non-discriminatory protocol.

eliminated by reasonable accommodation." 42 U.S.C.A. § 12111(3). Pertinent regulations of the Equal Employment Opportunity Commission ("EEOC") extend "the definition of direct threat to include threats to the worker himself." *Pinckney*, 186 Fed.Appx. at 925.

In the course of Mr. Nevitt's employment physical on August 24, 2011, he reported to U.S. Steel's nurse-examiner that he had suffered a back injury during his prior employment. Ex. A p. 157 l. 18-23. In response to U.S. Steel's request for further medical information, Mr. Nevitt provided U.S. Steel with one report of an examination performed by Dr. Poczatek on May 12, 2011, and another report from Dr. Cordover of an examination on May 27, 2011. Ex. A pp. 163 l. 13-23, 164 l. 1-12, 165 l. 8-23, 166 l. 1-21. In his report, Dr. Poczatek had noted that Mr. Nevitt experienced pain "with twisting as well as frequent forward flexion" and had problems with "numbness" and "lumbar radiculopathy." Ex. B pp. 92 l.20-22, 129 l. 22-23, 130 l. 1-6. In his May 27, 2011 visit to Dr. Cordover, Mr. Nevitt had complained of back pain, but a functional capacity evaluation administered by Dr. Cordover was invalid. Ex. B p. 146 l. 7-13.

Dr. Szabo reviewed these reports. Ex. B pp. 16 l. 6-12, 58 l. 4-13. In the absence of a valid functional capacity evaluation and resultant inability of Dr. Cordover to assess the true condition of Mr. Nevitt's back, Dr. Szabo relied on Dr. Poczatek's roughly contemporaneous assessment. Ex. B pp. 62 l. 10-13, 76 l. 4-

22. At the time that she was reviewing the records, it was Dr. Szabo's impression that Dr. Poczatek was Mr. Nevitt's treating physician, while Mr. Nevitt saw Dr. Cordover only once, on May 27, 2011. Ex. B p. 76 l. 12-22. Based on Dr. Poczatek's evaluation, Dr. Szabo recommended work restrictions similar to those Dr. Poczatek had imposed on Mr. Nevitt, i.e., a lifting restriction of twenty pounds, a ten minute break every two hours and no repetitive movements of the back. Ex. B pp. 129 l. 5-23, 130 l. 1-20.

It is undisputed that the Utility Person position for which Mr. Nevitt applied requires heavy manual labor, involving lifting of 80 to 100 pounds, repetitive movements, bending, crawling, stooping and shoveling. Ex. B p. 43 l. 11-15; Ex. D pp. 10 l. 7-17, 14 l. 2-8. Dr. Szabo found that Mr. Nevitt was unable to perform these duties safely without restrictions. U.S. Steel's Operations personnel simply could not accommodate those restrictions. Ex. D p. 7 l. 10-23; Ex. E p. 11 l. 4-23.

Moreover, due to the nature of the steelmaking process and the short window of time that the Utility Person has in which to add material to the furnace in response to temperature and chemistry testing, regularly scheduled breaks were not possible. Ex. D pp. 7 l. 10-23, 8 l. 3-23. Ex. E p. 11 l. 4-23.

In this case, Mr. Nevitt cannot show that he was able to perform the essential functions of the Utility Person position without posing a 'direct threat' to himself

or to others with whom he would work routinely. Therefore, the 'qualified' prong of Mr. Nevitt's prima facie case fails as a matter of law.

### 3. Mr. Nevitt Cannot Show that U.S. Steel's Decision Not to Hire Him Was Discriminatory

As the third element of his prima facie case, Mr. Nevitt must prove that, *because of* his perceived disability, U.S. Steel intentionally discriminated against him. *Wolfe v. Postmaster General*, 488 Fed.Appx. 465, 468 (11th Cir. 2012); *Wright v. Hyundai Motor Mfg. Alabama, LLC*, at *4 (citing *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)) (plaintiff bears ultimate burden of proving intentional discrimination).

As explained above, U.S. Steel properly assessed Mr. Nevitt's medical condition and based its decision not to hire him on the conclusion that, in the physically demanding job he sought, he posed a threat to his own safety and to the safety of others. Ex. B p. 92 l. 13-22. That threat could not be eliminated by any reasonable accommodation, which U.S. Steel properly and reasonably explored. In the total absence of discrimination or slightest inference of discriminatory intent, Mr. Nevitt cannot satisfy his burden of proving intentional discrimination.

## B. Mr. Nevitt Cannot Show That U.S. Steel's Reasons For Not Hiring Him Were Pretextual

Even if Mr. Nevitt were able to prove all three elements of his prima facie case, which he cannot, he then must prove by a preponderance of the evidence that

U.S. Steel's reason for not hiring him was false, and that its true reason was discrimination. *Holly v. Clairson Industries, L.L.C.*, 492 F.3d 1247, 1255 (11th Cir.2007) (Title VII burden shifting analysis applies in ADA cases); *Selkow v. 7-Eleven, Inc.*, 2012 W.L. 2054872, at *7-8 (M.D. Fla.) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997)) (plaintiff's evidence must be sufficient to permit a fact finder to conclude that the reasons given by the employer were false). Mr. Nevitt cannot satisfy this heavy burden, and his claim of 'regarded as' disability fails for this additional reason.

Here, the record demonstrates irrefutably that U.S. Steel's actions in evaluating Mr. Nevitt's physical condition, assigning and attempting to accommodate work restrictions and, ultimately, in deciding not to hire him were entirely legitimate and non-discriminatory. Given the physical demands of the Utility Person position and the significant dangers attendant to the steelmaking process, U.S. Steel's determination that Mr. Nevitt posed a direct threat to himself and to others was a legitimate, non-discriminatory reason for it decision not to hire Mr. Nevitt.

There is no evidence that U.S. Steel acted improperly or with discriminatory intent, and there is no question of fact for the jury to decide.

**C. Mr. Nevitt's Claim that U.S. Steel Violated the ADA'S Medical Examination and Inquiry Provisions Is Procedurally and Substantively Defective**

**1. Mr. Nevitt Failed to File Prerequisite EEOC Charge**

As a material precondition of his civil action under the ADAA, Mr. Nevitt was required to file a charge with the EEOC alleging U.S. Steel's violation of the medical examination and inquiry provisions, which forms the basis of Count II of the Amended Complaint. *Morris v. Precoat Metals*, 2012 WL 4727995, at *11 (N.D. Ala. Sept. 27, 2012) (citing *Brewer v. Alabama*, 111 F.Supp.2d 1197, 1204 (M.D. Ala.2000). Mr. Nevitt's claim of violation of the ADA's Medical Examination and Inquiry provisions fails procedurally, because he did not file an EEOC charge of such violation, and failed to exhaust his administrative remedies.

It is well recognized that an EEOC charge is not subject to strict interpretation. *Cooper v. Community Haven For Adults and Children With Disabilities*, 2013 WL 24240, at *5 (M.D. Fla. Jan. 2, 2013). Nonetheless, an ADA complaint is limited in scope to the discrimination alleged in the EEOC charge and related administrative investigation. *Id.* Mr. Nevitt's one EEOC charge alleged only "that [he] was discriminated against and regarded as disabled." Ex. 16 to Ex. A. There is no construction that would suggest that Mr. Nevitt complained to the EEOC about U.S. Steel's actions, or that the EEOC had any

opportunity to investigate those actions. Mr. Nevitt cannot pursue the allegation in this court. *See Morris*, at *12.

**2. There Is No Evidence That U.S. Steel Did Not Conduct A Proper Medical Examination And Inquiry**

Plaintiff alleges that U.S. Steel violated the ADA's Medical Examination and Inquiry Provisions because "[t]he medical information obtained by Defendant was improperly used to screen out Plaintiff, and the criteria applied by Defendant was non job-related and consistent with business necessity." Amended Complaint ¶43. The claim fails substantively because the undisputed evidence of record shows that U.S. Steel's medical examination and inquiry concerning Mr. Nevitt complied in all respects with the ADA. U.S Steel made a reasonably informed and considered decision in determining Mr. Nevitt's restrictions using his medical records provided by him. Given the nature of the job for which Mr. Nevitt applied, and the dangers inherent in that job, U.S. Steel's inquiry was plainly job-related and consistent with business necessity.

The law is clear that U.S. Steel was entitled to gather health information concerning Mr. Nevitt once an offer of employment was extended and prior to commencement of work. U.S. Steel also was permitted to condition its offer of employment on Mr. Nevitt's medical history and the results of his medical examination. 42 U.S.C. § 12112(3); 29 C.F.R. 1630.14(b)(3). This is precisely what occurred.

An employer complies with the ADA, when it bases its employment decision on objective, reliable evidence of the applicant's work restrictions, i.e., the medical opinion of the applicant's own doctor, even if that opinion later changes or the employer's understanding of it turns out to be mistaken." *Solorio v. American Airlines, Inc.*, 2002 W.L. 485284, at * 6 (M.D. Fla.). What is required is that "the employer made a reasonably informed and considered decision before taking an adverse employment action." *Lowe v. Alabama Power Co.*, 244 F.3d 1305, 1308 (11th Cir. 2011). The employer's decisional process does not have to be optimal or leave no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action. *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998) (cited with approval in *Lowe*, 244 F.3d at 1308)).

In this instance, Dr. Sabo specifically relied on the medical records from Mr. Nevitt's own doctors, which were provided by plaintiff for the express purpose of allowing the company to assess his condition. U.S. Steel did and was entitled to base its decision on its reasonable interpretation of this objective evidence as described above. There is no question of fact for the jury.

Further, there is no triable issue of fact as to whether U.S. Steel's inquiry was job-related and consistent with business necessity. As stated above, the Utility Person position is physically demanding with heavy manual labor, and the Utility

Person is directly involved in the potentially hazardous steelmaking process. U.S. Steel needed to inquiry into the condition of Mr. Nevitt's back to determine whether he could meet the physical requirements of the job and to ensure that he would not pose a risk to workplace safety if he were hired.

## III. CONCLUSION

For the reasons stated above, defendant United States Steel Corporation respectfully requests that this Honorable Court enter summary judgment in its favor as to both of plaintiff's claims, and dismiss the Amended Complaint.

*s/ William H. Morrow*
Attorney for Defendant
United Stated Steel Corporation

OF COUNSEL:

William H. Morrow (MORRW8589)
wmorrow@lightfootlaw.com
Jonathan R. Little (LITTJ4491)
jlittle@lightfootlaw.com
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, Alabama 35203-3200
Telephone: (205) 581-0700
Facsimile: (205) 581-0799

Anthony F. Jeselnik (Pa. I.D. 20650)
afjeselnik@uss.com
Law Department of
United States Steel Corporation
600 Grant Street, Room 1500
Pittsburgh, PA 15219-2800
Telephone: (412) 433-2962
Facsimile: (412) 433-2811

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of October, 2013, a copy of the foregoing Answer was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system:

Adam M. Porter, Esquire
2301 Morris Avenue, Suite 102
Birmingham, AL 35203

Henry F. Sherrod III, Esquire
119 South Court Street
P. O. Box 606
Florence, AL 35631-0606

*s/ William H. Morrow*
Of Counsel