FILED

2013 Nov-18  PM 02:57
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

EZEIKIEL NEVITT,                    )
                                    )
      Plaintiff            )
                                    )
v.                                  )     CASE NO. 2:12-CV-2150-AKK
                                    )
UNITED STATES STEEL                 )
CORPORATION,                        )
                                    )
      Defendant.           )

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Henry F. Sherrod III (ASB-1200-D63H)
HENRY F. SHERROD III, P.C.
119 South Court Street
P. O. Box 606
Florence, Alabama 35631-0606
Phone: 256-764-4141
Fax: 877-684-0802
Email: hank@alcivilrights.com

Adam Porter
2301 Morris Avenue, Suite 102
Birmingham, Alabama 35203
Phone: 205-870-7185
Fax: 205-322-8915
Email: adamporter@earthlink.net

Attorneys for Plaintiff

# TABLE OF CONTENTS

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Response to Defendant's Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Plaintiff's Additional Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.      The EEOC's Interpretation of the ADAAA's Transitory and Minor Provision
        Should Be Followed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.     Even if this Court Rejects the EEOC's Interpretation, Summary Judgment is
        Not Appropriate, as There Are Material Issues of Disputed Fact Regarding
        Whether Nevitt's Condition Was Transitory and Minor within the Meaning of
        the ADAAA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

III.    For the Reasons Explained in Nevitt's Motion for Partial Summary Judgment,
        U.S. Steel Is Not Entitled to Summary Judgment Based on Any Direct Threat
        Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IV.     U.S. Steel Is Not Entitled to Summary Judgment on Nevitt's Medical
        Examination and Inquiry Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        A.      Nevitt Exhausted His Administrative Remedies by Filing an EEOC
                Charge Alleging Disability Discrimination Related to the Withdrawal of
                a Conditional Offer of Employment Following a Medical Examination.
                . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        B.      There Are Disputed Issues of Material Fact Regarding Whether U.S.
                Steel Made a "Reasonably Informed and Considered Decision" in
                Revoking the Conditional Offer of Employment. . . . . . . . . . . . . . 21

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

EZEIKIEL NEVITT,         )
                         )
     Plaintiff        )
                         )
v.                    )    CASE NO. 2:12-CV-2150-AKK
                         )
UNITED STATES STEEL     )
CORPORATION,        )
                         )
     Defendant.     )

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### Introduction

For reasons stated below and in plaintiff's motion for partial summary judgment, defendant's motion is due to be denied.

### Response to Defendant's Facts

Plaintiff does not dispute the facts stated by defendant, though many of them are irrelevant or only marginally relevant, except as follows:

15.    *See* Pl. Fact No. 9 below.

16.-21., 30.  Defendant describes Dr. Szabo's attempt to defend her decision to impose restrictions but fails to acknowledge Nevitt's normal physical examination, Nevitt's report that the back injury had resolved, the U.S. Steel policy allowing further testing, and other relevant statements she made in her deposition. *See* Pl. Fact

Nos. 2-4, 11-22 below.

26.    *See* Pl. Fact No. 23 below.

### Plaintiff's Additional Facts[1]

1.    Zeke Nevitt applied for a utility (labor) position at U.S. Steel, received a conditional offer of employment, and was evaluated by the U.S. Steel medical staff on August 24, 2011. [Szabo Dep. (Pl. Ex. 2) at 172; Wilbert Dep. (Pl. Ex. 3) at 47]

2.    The   physical exam included various tests intended to identify musculoskeletal problems. [Wilbert Dep. (Pl. Ex. 3) at 21-22, 34; Szabo Dep. (Pl. Ex. 2) at 160-61]

3.    Nevitt's physical exam was normal.  [Wilbert Dep. (Pl. Ex. 3) at 30, 42; Szabo Dep. (Pl. Ex. 2) at 172] Nevitt had no sign of having a problem with his back on that date. [Szabo Dep. (Pl. Ex. 2) at 3]

4.    Nevitt did disclose a history of a back injury that had been treated with pain medications but which left no residual problems.   [Wilbert Dep. (Pl. Ex. 3) at 30, 42]

5.    Nevitt had an on-the-job back injury in January 2011, but by June 2011 Nevitt was working regular duty with no restrictions. [Nevitt Dep. at 65, 91-93]

---

[1]    Pl. Fact Nos. 1-23 are identical to the facts in plaintiff's motion for partial summary judgment.

6.      U.S. Steel requested additional information regarding the back injury, and Nevitt provided two doctor notes, one from Dr. Robert Poczatek dated May 12, 2011, and one from Dr. Andrew Cordover dated May 27, 2011. [Nevitt Dep. (Pl. Ex. 1) at 146-48, 176; Poczatek note (Pl. Ex. 6); Cordover note (Pl. Ex. 7)]

7.      Nevitt retrieved the Poczatek note from his car on the date of the medical exam. [Nevitt Dep. (Pl. Ex. 1) at 146-48]

8.      Nevitt got the Cordover note from the doctor's office after receiving an email from U.S. Steel on or about August 26, 2011, requesting "medical records" regarding his back injury. [Nevitt Dep. (Pl. Ex. 1) at 176, 275; 08-26-11U.S. Steel Email (Pl. Ex. 10)]

9.      Nevitt understood from his communications with the U.S. Steel nurse (Wilbert) that he had satisfied U.S. Steel's request for records by providing the two notes. [Nevitt Dep. (Pl. Ex. 1) at 176-77]

10.      While the May 12 Poczatek note included some restrictions of uncertain duration,[2] the later (May 27) Cordover note completely released Nevitt with no restrictions.  [05-12-11 Poczatek Office Note (Pl. Ex. 6); 05-27-11 Cordover Release (Pl. Ex.7)]

---

[2]      The Poczatek restrictions were temporary, limited to 4 weeks, but U.S. Steel did not have the contemporaneous note stating this fact at the time it withdrew its conditional offer.  [05-12-11 Poczatek Worker's Compensation Form (Pl. Ex. 8)]

11.     Nevitt provided the Cordover release on or prior to August 30, 2011. [U.S. Steel Physical Examination Report (Pl. Ex. 9); Szabo Dep. (Pl. Ex. 2) at 101-02]

12.     U.S. Steel never informed Nevitt that there was any deficiency or issue with the medical release he provided from Dr. Cordover. [Nevitt Dep. (Pl. Ex. 1) (Pl. Ex. 1) at 175]

13.     Rather, in an email dated September 15, 2011, U.S. Steel informed Nevitt that the job offer was withdrawn, stating: "It has been determined that you do not meet the qualifications of the Utility Person, 1450BR, position for which you applied.  Therefore, the contingent offer of employment . . . is rescinded." [05-15-11 U.S. Steel Email (Pl. Ex. 11)]

14.     The withdrawal of the offer was based on restrictions imposed by the company medical director, Cheryl Szabo, M.D., who reviews the information obtained as a result of the medical exam and decides whether any restrictions will be placed on the applicant. [Wilbert Dep. (Pl. Ex. 3) at 23-24]

15.     Dr. Szabo considered Nevitt to suffer from chronic pain and considered his back injury history to permanently preclude him from working at U.S. Steel. [Szabo Dep. (Pl. Ex. 2) at 113]

16.     Dr. Szabo placed restrictions on Nevitt of no lifting more than 20 pounds, 10-minute breaks every two hours, and no repetitive movement of the back.

4

[Wilbert Dep. (Pl. Ex. 3) at 25-26; U.S. Steel Physical Examination Report (Pl. Ex. 9)]

17.     These restrictions are considered light duty. [Szabo Dep. (Pl. Ex. 2) at 130]

18.     Dr. Szabo placed these restrictions on Nevitt to prevent Nevitt from aggravating his back, though she could not say Nevitt would ever have a problem with back pain in the future and conceded Nevitt was not in any immediate danger of aggravating his back if he went to work for U.S. Steel. [Szabo Dep. (Pl. Ex. 2) at 92-100, 155-56, 174-76]

19.     According to Dr. Szabo, even if she had been provided the complete medical records of Dr. Poczatek and Dr. Cordover, including the note that showed Dr. Poczatek's restrictions were temporary, [05-12-11 Poczatek Worker's Compensation Form (Pl. Ex. 8)], she would have imposed the same restrictions on Nevitt. [Szabo Dep. (Pl. Ex. 2) at 105, 131-34]

20.     U.S. Steel's policies permitted Dr. Szabo to require Nevitt to undergo further testing to address any questions or concerns about whether Nevitt could safely do the job, but Dr. Szabo chose not to order any further evaluation of Nevitt. [Szabo Dep. (Pl. Ex. 2) at 119-20]

21.     In fact, Dr. Szabo has never had a person undergo further testing or

5

examination before she imposed restrictions. [Szabo Dep. (Pl. Ex. 2) at 120]

22.    Dr. Szabo did not even meet or talk with Nevitt even though she says subjective information regarding a person's pain and the person's thoughts about his or her ability to do the job are "important." [Nevitt Dep. (Pl. Ex. 1) at 265-66; Szabo Dep. (Pl. Ex. 2) at 37]

23.    Dr. Szabo believes the utility job requires regular lifting of objects weighing 80-100 pounds, [Szabo Dep. (Pl. Ex. 2) at 43], but U.S. Steel managers testified the job only required lifting 50 pounds, [Reed Dep. (Pl. Ex. 4) at 11, 16; Thompson Dep. (Pl. Ex. 5) at 8, 16].

24.    According to Dr. Szabo, Nevitt's medical records establish that he suffers from "chronic pain" that is subject to aggravation or exacerbation in the future. [Szabo Dep. (Pl. Ex. 2) at 93, 113]

25.    Following Nevitt's on-the-job back injury, Nevitt was under restrictions at work for almost 5 months; experienced episodes of weakness in which his leg would give way; experienced pain, numbness, and radiculopathy; had MRI and nerve conduction studies; underwent physical therapy; took narcotics and muscle relaxers; used a TENS unit; and underwent two epidural steroid injections in his back. [Nevitt Dep. (Pl. Ex. 1) at 70, 96-97, 101, 104-05, 126-27; Nevitt medical records (Nevitt Dep. Ex. 2, part of U.S. Steel's evidentiary submission)]

6

## Argument

### I.    The EEOC's Interpretation of the ADAAA's Transitory and Minor Provision Should Be Followed.

In arguing that Szabo's perception of Nevitt is irrelevant, U.S. Steel's brief ignores the statutory history, the regulations, and the view of the majority of courts. Congress singled out the regarded as prong of the ADAAA's definition of disability as demanding a "broad view." *Id.* § 2(b)(3) (codified at 42 U.S.C. § 12101 note). The ADA regulations acknowledge and incorporate this statutory history, stating that Congress amended the ADA "to make it easier for people with disabilities to obtain protection under the ADA." 29 C.F.R. § 1630.1(c)(4).  According to the regulations, the definition of "disability" is to be construed broadly in favor of expansive coverage, and the primary focus in ADA cases "should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability." 20 C.F.R. § 1630.1(c)(4). Consistent with this purpose, "while the ADA previously required the perceived disability to substantially limit a major life activity, the [ADAAA] removed this hurdle," and the "ADA now includes perceived disabilities 'whether or not the impairment limits or is perceived to limit a major life activity.'" *Becker v. Elmwood Local School Dist.*, No. 3:10 CV 2487, 2012 WL 13569 at *9 (N.D. Ohio Jan. 4, 2012)

(quoting 42 U.S.C. § 12102(3)(A)).

Under the ADAAA, an employer is now deemed to regard an employee as disabled whenever it takes a prohibited employment action, so long as the actual or perceived physical or mental impairment is not both transitory and minor.  42 U.S.C. § 12102(3)(A)-(B); 29 C.F.R. § 1630.2(g)(1)(iii), (l).  "Whether the impairment at issue is or would be "transitory and minor" is to be determined objectively. A covered entity may not defeat "regarded as" coverage of an individual simply by demonstrating that it subjectively believed the impairment was transitory and minor; rather, the covered entity must demonstrate that the impairment is (in the case of an actual impairment) or would be (in the case of a perceived impairment) both transitory and minor."  29 C.F.R. § 1630.15(f).

Numerous district courts, following the regulations, have recognized that the transitory and minor defense requires courts to look at the impairment as perceived by the employer, not at the underlying impairment.  While the analysis is an objective one, in the case of a perceived disability, what is objectively analyzed is the impairment perceived by the employer.  *See Snider v. United States Steel*, No. 2:12-cv-03508-AKK, 2013 WL 1278973 at *3 (N.D. Ala. March 26, 2013) ("This means that the individual has been subjected to an action prohibited by the ADA as amended because of an actual or **perceived impairment** that is not both 'transitory and

8

minor.'") (citing 29 C.F.R. § 1630.2(g)(1)(iii)) (emphasis added); *Davis v. Vermont Dept. of Corrections*, 868 F. Supp. 2d 313, 327 (D. Vermont 2012) ("Defendant 'must demonstrate that the impairment is (in the case of an actual impairment) or would be (in the case of a perceived impairment) both transitory and minor'") (quoting 29 C.F.R. § 1630.15(f)); *Bush v. Donahoe*, No. 11-1287, 2013 WL 4045785 at *16 (W.D. Pa. August 8, 2013) (same); *Lewis v. Florida Default Law Group*, No. 8:10-cv-1182-T-27EAJ, 2013 WL 4527456 at *6 (M.D. Fla. Sept. 16, 2011) (citing regulations and stating that "[t]he 'transitory and minor' exception to the regarded as prong' focuses on the perceived impairment itself and not the condition giving rise to such impairment");[3] *Davis v. NYC Dept. of Educ.*, 10-CV-3812 KAM LB, 2012 WL 139255 at *5 (E.D.N.Y. Jan. 18, 2012) (citing regulations); *Zurenda v. Cardiology Assoc.*, No. 3:10-CV-0882, 2012 WL 1801740 (N.D.N.Y. May 16, 2012) (citing regulations and analyzing impairment as percieved by the employer); *Wallner v. MHV Sonics, Inc.*, No. 8:10-cv-2039-JDW-EAJ, 2011 WL 5358749 at *4 (M.D. Fla. Nov. 4, 2011); *see also Moore v. Jackson County Board of Educ.*, No. CV-12-S-2007-NE, 2013 WL 5797844 at *7 (N.D. Ala. October 8, 2013) (noting "persuasive

---

[3]    The *Lewis* court also notes that "[a]lthough the [EEOC's] administrative interpretations are not binding, they 'do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" 2013 WL 4527456 at *4 (quoting *Meritor Savings Bank, FSB v. Vinson*, 411 U.S. 57, 65 (1986)).

regulatory provisions interpreting ADAAA").

The examples in the EEOC's Interpretive Guidance make the point clearly:

> The relevant inquiry is whether the actual or perceived impairment on which the employer's action was based is objectively "transitory and minor," not whether the employer claims it subjectively believed the impairment was transitory and minor. For example, an employer who terminates an employee whom it believes has bipolar disorder cannot take advantage of this exception by asserting that it believed the employee's impairment was transitory and minor, since bipolar disorder is not objectively transitory and minor. At the same time, an employer that terminated an employee with an objectively "transitory and minor" hand wound, mistakenly believing it to be symptomatic of HIV infection, will nevertheless have "regarded" the employee as an individual with a disability, since the covered entity took a prohibited employment action based on a perceived impairment (HIV infection) that is not "transitory and minor."

29 C.F.R. Pt. 1630 App., § 1630.2(l); *see also Wallner*, 2011 WL 5358749 at *4 (noting bipolar and HIV examples in appendix); *Lewis*, 2011 WL 4527456 at *6 (same).

Here, even if Nevitt had a transitory and minor back injury, which is a jury question for reasons explained below, U.S. Steel's doctor perceived Nevitt as suffering from a "chronic pain" problem that was indisputably non-transitory and non-minor, as explained in plaintiff's motion for partial summary judgment.

The cases relied upon by U.S. Steel, an unpublished Sixth Circuit decision, *White v. Interstate Distributor Co.*, 438 Fed. Appx. 415 (6th Cir. 2011), and two district court cases, *Dugay II v. Complete Skycap Services, Inc.*, No. CV-10-2404,

2011 WL 3159171 (D. Arizona 2011), and *Butler v. Advance/Newhouse Partnership*, No. 6:11-cv-1958-Orl-28GJK, 2013 WL 1233002 (M.D. Fla. March 26, 2013), are outliers.  These cases do not consider the regulations, and no decision of which the undersigned is aware has rejected the EEOC's regulations or interpretive guidance. Moreover, the language cited is dicta, as in each of these cases there is no indication that the condition at issue was perceived as lasting longer than 6 months or as being non-minor.  *See White*, 438 Fed. Appx. at 420; *Dugay II*, 2011 WL 3149171 at *4; *Butler*, 2013 WL 1233002 at *8.

II. **Even if this Court Rejects the EEOC's Interpretation, Summary Judgment is Not Appropriate, as There Are Material Issues of Disputed Fact Regarding Whether Nevitt's Condition Was Transitory and Minor within the Meaning of the ADAAA.**

Nevitt concedes that his back pain resolved just short of the 6 months in the regulation (January 3, 2011, to mid-June 2011). This does not mean that his impairment lasted only 6 months, however.  According to Szabo, Nevitt's injury was subject to aggravation and exacerbation in the future.  Therefore, it is fairly treated as non-transitory.  *See Ruggles v. Virginia Linen Service, Inc.*, No. 6:12-cv-00064, 2013 WL 4678408 at *6 n.12 (W.D. Va. Aug. 30, 2013) (back condition that may cause episodes of pain throughout the years is not transitory); *Cohen v. CHLN, Inc.*, CIV.A. 10-00514, 2011 WL 2713737 (E.D. Pa. 2011) ("Plaintiff's back and leg issues

11

began four months before his termination and were not resolved by the injections recommended by Plaintiff's doctor. At the time of the termination, Plaintiff's doctor had suggested the possibility of surgery requiring extensive recovery time, with no indication that Plaintiff's condition would be resolved permanently. Such a severe, ongoing impairment stands in distinct contrast to those cited by the EEOC as merely minor and temporary, such as the common cold or flu. 29 C.F.R. pt. 1630.2, app. § 1630.2(l)").

Moreover, even if plaintiff's back problem is deemed to be less than 6 months in duration, a reasonable jury can find that his condition was not minor. Plaintiff's back injury is far from the types of minor conditions like a cold or the flu that Congress intended to exclude. *See Lewis*, 2011 WL 4527456 at *6 (noting statutory history indicates provision was intended to prevent "regarded as" claims from being extended to persons with minor ailments like a cold or the flu). Nevitt suffered from back pain for almost 6 months; was under restrictions at work for almost 5 months; experienced episodes of weakness in which his leg would give way; experienced pain, numbness, and radiculopathy; had an MRI and nerve conduction studies; underwent physical therapy; took narcotics and muscle relaxers; used a TENS unit; and underwent 2 epidural steroid injections in his back.. *See* Pl. Fact No. 25 above.

Moreover, because Dr. Szabo testified Nevitt's condition was serious, U.S.

12

Steel is not entitled to summary judgment.[4]  *Chamberlain v. Valley Health System, Inc.*, 781 F. Supp. 2d 305 (W.D. Va. 2011), is on point.  In this case the employer sought summary judgment on the ground that the plaintiff's condition was transitory and minor.  The court found fact issues precluded summary judgment based on the employer's statements:

> In moving for summary judgment with respect to this element, Valley Health contends that "Chamberlain was never 'regarded as' disabled because Valley Health believed her vision problem was transitory and minor." (Br. in Supp. of Summ. J. at 16). Construing all of the evidence and factual inferences in favor of Chamberlain, however, the court concludes that a reasonable jury could find to the contrary. As previously stated, Chamberlain has submitted a sworn affidavit in which she states that Bonnie Pitt, Valley Health's Corporate Director of Pharmacy, insisted that Chamberlain was completely unable to work at the hospital as a result of her vision problem, and that Pitt required her to apply for PMD leave. Assuming the truth of Chamberlain's assertions, the court concludes that the issue of whether Valley Health believed that Chamberlain's impairment was both transitory and minor must be decided by a jury.

*Id.* at 311.

Here, as in *Chamberlain*, Szabo's statements show that Nevitt's condition was far from minor. As a result of Nevitt's history of a serious back injury involving "chronic pain," Szabo restricted Nevitt to light duty to prevent him from future injury.

---

[4]     Nevitt would note U.S. Steel's obvious attempt to have its cake and eat it as well.  U.S. Steel relies on Dr. Szabo's testimony regarding the seriousness of Nevitt's condition in making direct threat arguments but ignores it when arguing Nevitt's condition is minor.

**III.    For the Reasons Explained in Nevitt's Motion for Partial Summary Judgment, U.S. Steel Is Not Entitled to Summary Judgment Based on Any Direct Threat Argument.**

U.S. Steel argues that because Nevitt was a direct threat, Nevitt is not qualified and its actions were not discriminatory or pretextual. [U.S. Steel Brief at 18-23] As explained in Nevitt's motion for partial summary judgment, U.S. Steel cannot claim Nevitt was a direct threat.  Even if the Court finds that Nevitt is not entitled to summary judgment on this issue, at a minimum there are disputed issues of material fact regarding whether Nevitt was a direct threat.

An employer is entitled to rely upon a "direct threat" defense only if the individual in question actually poses "a significant risk of substantial harm." 29 C.F.R. § 1630.2(r). An employer misjudges the objective evidence at its own peril. *See Bragdon v. Abbott*, 524 U.S. 624, 649-50 (1998) (employer's "belief that a significant risk existed, even if maintained in good faith, would not relieve him from liability . . . courts should assess the objective reasonableness of the [employer's] views").

The ADA defines a "direct threat" as "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3). The EEOC has clarified that an employer "is not permitted to deny an employment opportunity to an individual with a disability merely because of a

slightly increased risk. The risk can only be considered when it poses a significant risk, i.e., high probability, of substantial harm; a speculative or remote risk is insufficient." Interpretive Guidance on Title I of the ADA, 29 C.F.R. Pt. 1630, App. § 1630.2(r); *see also Bragdon*, 524 U.S. at 649 ("Because few, if any, activities in life are risk free, *Arline* and the ADA do not ask whether a risk exists, but whether it is significant."); *Hamlin v. Charter Tp. of Flint*, 165 F.3d 426, 432 (6th Cir. 1999) (direct threat requires "high probability of potential harm"); *Estate of Mauro v. Borgess Med. Ctr.*, 137 F.3d 398, 403 (6th Cir. 1998) (court "must not consider the possibility of HIV transmission, but rather focus on the probability of transmission") (emphasis added).  In determining whether an individual poses a significant risk, an employer must rely on "an individualized assessment of the individual's **present** ability to safely perform the essential functions of the job." 29 C.F.R. Pt. 1630, App. § 1630.2® (emphasis added); *Holiday v. City of Chattanooga*, 206 F.3d 637, 643 (6th Cir. 2000) (a determination "which focuses on the medical condition's actual effect on the specific plaintiff [ ] lies at the heart of the ADA"); *EEOC v. Prevo's Family Market, Inc.*, 135 F.3d 1089, 1097 (6th Cir. 1998) ("the principal purpose of the regulation is to prohibit employers from making adverse employment decisions based on stereotypes and generalizations associated with the individual's disability rather than on the individual's actual characteristics").

15

A speculative concern about future injury, however, is not a legitimate basis for concluding that an applicant or employee is a direct threat to himself. *See Chevron USA, Inc. v. Echazabal*, 536 U.S. 73, 86 (2002) (stating that "[t]he direct threat defense must be 'based on a reasonable medical judgment that relies on the most current medical knowledge and/or the best available objective evidence,' and upon an expressly 'individualized assessment of the individual's present ability to safely perform the essential functions of the job,' reached after considering, among other things, the imminence of the risk and the severity of the harm portended") (quoting 29 C.F.R. § 1630.2(r)).

Based on the medical evidence and the testimony of Szabo, Nevitt easily defeats U.S. Steel's direct threat arguments. It is undisputed that Nevitt was released to full duty by the physicians who saw him for his back injury and that neither of these physicians believed Nevitt needed work restrictions. Szabo's imposition of restrictions, based on limited and stale information, without even speaking with Nevitt or conducting further testing, is the antithesis of what the law demands.

Moreover, Szabo made clear she sought to protect Nevitt, not from serious injury or death, but only from a return of his back pain. Nevitt's own testimony and that of Dr. Szabo establish that Nevitt could physically do the job. According to Szabo, she imposed restrictions to protect Nevitt from possibly being injured in the

16

future; she never claimed Nevitt was not able do the job. The objective medical

information, indeed all the medical information, subjective and objective, shows that

Nevitt was completely recovered from the prior back injury when he applied to work

for U.S. Steel.

U.S. Steel cannot escape liability because it relied on a doctor. Of course, this

doctor was a company employee likely concerned about worker's compensation costs,

but even if Szabo was not the company medical director, an employer acts at its peril

when it acts contrary to the objective medical evidence regardless of the participation

of a physician. *See Lowe v. Alabama Power Company*, 244 F.3d 1305, 1308-09

(11th Cir. 2001); *Taylor v. Pathmark Stores, Inc.*, 177 F.3d180, 193 (3d Cir. 1999)

(no reasonable mistake defense); *Holiday*, 206 F.3d at 644-45 (citing *Taylor* and

stating, among other things, that "[c]ourts need not defer to an individual doctor's

opinion that is neither based on the individualized inquiry mandated by the ADA nor

supported by objective scientific and medical evidence").

**IV.   U.S. Steel Is Not Entitled to Summary Judgment on Nevitt's Medical
Examination and Inquiry Claim**.

**A.     Nevitt Exhausted His Administrative Remedies by Filing an EEOC
Charge Alleging Disability Discrimination Related to the
Withdrawal of a Conditional Offer of Employment Following a
Medical Examination.**

The Eleventh Circuit has summarized the law applicable to U.S. Steel's

17

argument as follows:

> The purpose of this exhaustion requirement "is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983); *see also Wu v. Thomas*, 863 F.2d 1543, 1548 (11th Cir. 1989) ("The purpose of the filing requirement is to insure that the settlement of grievances be first attempted through the office of the EEOC.") (internal quotation and citation omitted). This Court further has noted that judicial claims are allowed if they "amplify, clarify, or more clearly focus" the allegations in the EEOC complaint, but has cautioned that allegations of new acts of discrimination are inappropriate. *Wu*, 863 F.2d at 1547 (citation omitted).
>
> In light of the purpose of the EEOC exhaustion requirement, we have held that a "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000) (internal quotation and citation omitted); *Sanchez* [*v. Standard Brands, Inc.*], 431 F.2d [455,] 466 [(5th Cir. 1970) (noting that the allegations in a judicial complaint filed pursuant to Title VII may encompass any kind of discrimination like or related to the allegations contained in the charge). Courts are nonetheless "extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII]." *Sanchez*, 431 F.2d at 460-61. As such, this Court has noted that "'the scope of an EEOC complaint should not be strictly interpreted.'" *Id.* at 465 (citation omitted).

*Gregory v. Georgia Dept. of Human Resources*, 355 F.3d 1277, 1279-80 (11th Cir. 2004).

Plaintiff's charge states that he is asserting a disability discrimination claim based on not being hired following a medical examination in which he disclosed a prior "disability." [EEOC charge (Nevitt Dep. Ex. 16)]  To the extent Nevitt's charge

was not perfectly clear, Nevitt's intake questionnaire and interview with the EEOC investigator show Nevitt was claiming that U.S. Steel misused information related to a back injury he suffered at his prior employer. [Intake Questionnaire (Nevitt Dep. Ex. 15) at 2 (question 7) (not hired "because I filed worker's comp there"); Summary of Nevitt Interview (Nevitt Dep. Ex. 17) at 1 (describing employer's inquiries regarding prior back injury)]

Additionally, the EEOC-related documents before the Court, including plaintiff's intake questionnaire, the Notice of Right to Sue, and the Interview Summary, show plaintiff was not represented by counsel at the time his charge was filed. [Intake Questionnaire (Nevitt Dep. Ex. 15) at 4 (question 16); Notice of Right to Sue (Nevitt Dep. Ex. 18); Summary of Nevitt Interview (Nevitt Dep. Ex. 17)].

*Gregory* is controlling on these facts. The *Gregory* Court held that a retaliation claim was not administratively barred even though the plaintiff failed to check the retaliation box because the retaliation claim was based on the same facts as the plaintiff's discrimination claims. *Id.* at 1280. The court stated:

> After a careful *de novo* reading of Dr. Gregory's EEOC charge prepared without the assistance of counsel, and under the liberal EEOC charge strictures of *Sanchez*, we hold that the district court did not err in finding that Dr. Gregory's retaliation claim was not administratively barred by her failure to mark the retaliation space on the EEOC template form. The facts alleged in her EEOC charge could have reasonably been extended to encompass a claim for retaliation because they were inextricably intertwined with her complaints of race and sex discrimination. That is, she stated facts from which a reasonable

19

EEOC investigator could have concluded that what she had complained about is retaliation because of her complaints of Dr. Fuller's disparate treatment to the hospital's administration. Specifically, shortly after being subjected to certain allegedly discriminatory acts, she was terminated. An EEOC investigation of her race and sex discrimination complaints leading to her termination would have reasonably uncovered any evidence of retaliation. *See Danner v. Phillips Petroleum Co.*, 447 F.2d 159, 161-62 (5th Cir. 1971) (noting that employee filing an EEOC complaint without the assistance of counsel are to be construed liberally, and holding that EEOC charge complaining of discharge was "reasonably related" to Title VII complaint that "she was discharged").

*Id.* at 1280-81.

Like *Gregory*, the facts alleged in the charge are reasonably extended to encompass a disability discrimination claim based on the medical examination. Just as Gregory factually alleged retaliation by stating she was terminated after complaining to hospital administration about discrimination, Nevitt factually alleged a medical examination claim by stating the facts related to his medical examination and the disclosure of his prior back injury before U.S. Steel withdrew its offer. Of course, plaintiff also checked the disability discrimination box, and U.S. Steel has not identified (and plaintiff is not aware of) any case in which a plaintiff has been barred from pursuing a claim based on a checked protected category in which the adverse employment action (i.e., non-hiring) is stated in the body of the charge.

In addition, though not necessary, it is appropriate for the Court to consider plaintiff's intake questionnaire. *See Deneau v. Orkin, LLC*, No. 11-00455-B, 2013

20

WL 2178045 at *8 (S.D. Ala. 2013) (considering questionnaire); *but cf. Francois v. Miami Dade Couny, Port of Miami*, 432 F. Appx 819, 822 (11th Cir. 2011) (refusing to "definitely decid[e] whether an EEOC intake questionnaire may ever be considered when determining whether a plaintiff's Title VII . . . claim has been exhausted" but holding the district court correctly granted summary judgment in that case) (cited in *Deneau*).   As noted above, the intake questionnaire and the interview summary expand upon the medical examination referenced in the charge and eliminate any possible doubt regarding plaintiff's exhaustion of his medical examination claim.

### B.   There Are Disputed Issues of Material Fact Regarding Whether U.S. Steel Made a "Reasonably Informed and Considered Decision" in Revoking the Conditional Offer of Employment.

Nevitt agrees with U.S. Steel that *Lowe v. Alabama Power Company*, establishes the legal standard here.  U.S. Steel's contention that it "made a reasonably informed and considered decision" in withdrawing its conditional offer to Nevitt, [Defendant's Brief at 25], however, cannot withstand scrutiny and, at a minimum, is for the jury to decide (if not the Court on directed verdict).

In *Lowe* the Court denied summary judgment because the doctor's restrictions were improperly based, at least in part, on his "assumption that all double amputees have the same limitations" and were made without determining "Lowe's actual capabilities through a physical examination or functionality test" and therefore not

21

based "on particularized facts using the best available objective evidence as required by the regulations." 244 F.3d at 1309. Other courts have denied summary judgment to employers in similar circumstances. *See*, *e.g.*, *Gillen v. Fallon Ambulance Service, Inc.*, 283 F.3d 11 (1st Cir. 2002) (fact issues existed as to whether employer and company doctor acted on basis of stereotyping in refusing to hire applicant, where doctor failed to seek any objective medical evidence of capabilities of applicant); *Wysong v. The Dow Chemical Company*, 503 F.3d 441 (6th Cir. 2007) (jury could conclude employer perceived employee as disabled by refusing to release her to return to work due to concerns about safety risks in taking narcotic drugs while working on machine and fork lift); *see also Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 960 (10th Cir. 2002) ("The results of a medical inquiry or examination may not be used to disqualify persons who are currently able to perform the essential functions of a job, either with or without an accommodation, because of fear or speculation that a disability may indicate a greater risk of future injury, or absenteeism, or may cause future workers' compensation or insurance costs.") (quoting Equal Employment Opportunity Commission, Technical Assistance Manual on the Employment Provisions (Title I) of the Americans with Disabilities Act § 6.4 (1992)).

Here, Nevitt provided a complete release dated after the restrictions Szabo

22

relied upon and **passed** U.S. Steel's physical examination.  Moreover, Szabo, under U.S. Steel's policies, could have requested Nevitt to undergo further functionality testing but chose not to do so.  Because Szabo chose to ignore the complete release from Dr. Cordover and the completely normal physical examination **and** chose not to conduct further testing, a reasonable jury could certainly find U.S. Steel failed to act reasonably and violated the ADA's medical examination and inquiry provisions.

## Conclusion

For the above stated reasons, the Court should deny U.S. Steel's motion and grant plaintiff such other and further relief to which he is justly entitled.

Henry F. Sherrod III (ASB-1200-D63H)
HENRY F. SHERROD III, P.C.
119 South Court Street
P. O. Box 606
Florence, Alabama 35631-0606
Phone: 256-764-4141
Fax: 877-684-0802
Email: hank@alcivilrights.com

Adam Porter
2301 Morris Avenue, Suite 102
Birmingham, Alabama 35203
Phone: 205-322-8999
Fax: 205-322-8915
Email: adamporter@earthlink.net

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: William H. Morrow and Anthony F. Jeselnik.

24