FILED

2014 May-05  PM 02:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **EZEIKIEL NEVITT,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action Number |
| **v.** | ) | **2:12-cv-02150-AKK** |
| | ) | |
| **UNITED STATES STEEL** | ) | |
| **CORP.,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Ezeikiel Nevitt pursues this case against United States Steel Corporation

under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq*. Doc.

4 at 1. Nevitt alleges that U.S. Steel offered him a position at its plant, contingent

on him passing a physical examination, then withdrew the offer after learning

Nevitt suffered a back injury at a previous job. *Id*. at 2–4. Nevitt also alleges that

U.S. Steel violated the medical examination and inquiry provisions of the ADA.

*Id.* at 7. The parties have filed cross motions for summary judgment on the failure-

to-hire claim, docs. 25, 29, and U.S. Steel moves for summary judgment on the

medical examination and inquiry claim as well. The motions are fully briefed and

ripe for review. *See* docs. 25, 30, 35, 36, 37, 38. Based on a review of the evidence

and the law, the court finds that, regardless of whether the evidence is viewed in a light most favorable to Nevitt or to U.S. Steel, there are questions of material fact that preclude the court from granting either party's motion for summary judgment on the failure-to-hire claim. Therefore, those motions are due to be denied. However, Nevitt has failed to meet his evidentiary burden with regards to his medical examination and inquiry claim. Consequently, U.S. Steel's motion for summary judgment on that claim is due to be granted.

## I. SUMMARY JUDGMENT STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the

2

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252)).

## II. FACTUAL ALLEGATIONS

The facts underpinning this lawsuit are largely undisputed. On or about

3

January 1, 2011,[1] Nevitt suffered a back injury while working at a Cascades Sonoco paper plant when a machine malfunctioned and a load of paper weighing approximately 200 pounds struck him in the back. Doc. 29-1 at 66–68; *id.*, ex. 19. Following the incident, Nevitt experienced pain, numbness, radiculopathy, and episodes of weakness during which his leg would give way. Doc. 35 at 6. To treat his condition, he took narcotics and muscle relaxers, underwent physical therapy, used a TENS unit, and received two epidural steroid injections. *Id.* He also remained on restricted duty for almost five months. *Id.* According to Nevitt, by June 2011 his back pain resolved and he was "full[y] active" again at work. Doc. 29-1 at 91–92. As part of his worker's compensation settlement, Nevitt resigned from Cascades Sonoco. Doc. 30 at 5.

On August 8, 2011, Nevitt applied for a position as a Utility Technician at U.S. Steel. *Id.* Following an interview, U.S. Steel extended a conditional offer to Nevitt, contingent on him passing a pre-employment fitness for duty examination, which included a physical examination and an assessment of his relevant medical

---

[1] The parties' filings and evidentiary material contain inconsistent dates for Nevitt's injury. *See* doc. 25 at 2 (Nevitt's brief in support of his partial motion for summary judgment stating that the injury occurred in "January 2011"); doc. 30 at 3 (U.S. Steel's brief in support of its motion for summary judgment stating that the injury occurred on January 3, 2011); doc. 29-1 at 68–69 (Nevitt's deposition in which he is unable to recall the exact date of the accident); *id.*, ex. 2 (medical record stating the injury occurred on December 31, 2010); *id.*, ex. 19 (proposed worker's compensation settlement stating the injury occurred on January 3, 2011); *id.* (medical record stating the injury occurred on January 1, 2011). This disparity has no bearing on the court's analysis.

history. *Id*. Thereafter, on August 24, 2011, Nevitt underwent a physical examination by a U.S. Steel nurse, doc. 30 at 6, which yielded normal results, doc. 25 at 2. However, during the examination, Nevitt told the nurse about the back injury he suffered at Cascades Sonoco. *Id*. Consequently, U.S. Steel requested that Nevitt provide additional information about the injury. *Id*.

Nevitt provided U.S. Steel with two doctor's notes: one from Dr. Robert Poczatek dated May 12, 2011, and one from Dr. Andrew Cordover, dated May 27, 2011. Doc. 30 at 6. Dr. Poczatek's May 12, 2011 note indicated that Nevitt continued to report lower back pain, which Nevitt "rate[d] as high as 5–6/10." Doc. 26-7. Although Dr. Poczatek noted that twisting and frequent forward bending aggravated the pain, he stated that Nevitt could return to "regular work duties" if allowed to take a ten minute break every two hours. *Id*.[2] Dr. Cordover's May 27, 2011 note also indicated that Nevitt continued to experience back pain, but that Dr. Cordover did not believe "any restrictions [were] necessary for Nevitt at [the] time." Doc. 26-8.

Based on these two documents, U.S. Steel's medical director, Dr. Cheryl Szabo, concluded that Nevitt's ability to work was subject to the following restrictions: a lifting limit of twenty pounds, no repetitive back movements, and a

---

[2] Dr. Poczatek only intended for this restriction to last for four weeks, but its limited scope was not indicated in the note Nevitt provided to U.S. Steel. Doc. 25 at 3, n. 1.

ten-minute break every two hours. Doc. 30 at 7. Dr. Szabo testified that she

discounted Dr. Cordover's opinion because it appeared to her that Dr. Poczatek

was Nevitt's treating physician, and that Dr. Cordover's note was the product of a

one-time visit. Doc. 26-3 at 76. She also testified that she restricted Nevitt's lifting

and movement because Dr. Poczatek's note indicated that twisting and bending

aggravated Nevitt's pain, and that she simply tracked Dr. Poczatek in imposing the

break restriction. *Id.* at 129–30.

The utility technician position at U.S. Steel is physically demanding, and

requires the ability to regularly lift at least 50 pounds,[3] and frequently bend, stoop,

crawl, and shovel. *Id*. at 9. Additionally, because the duties include monitoring

furnace temperatures during a short window of time, plant management testified

that they could not accommodate a required ten-minute break every two hours. *Id.*

at 8–9. Because Dr. Szabo's restrictions were incompatible with the requirements

of the position, U.S. Steel withdrew Nevitt's contingent offer. Doc. 30 at 10.

## III. ANALYSIS

Nevitt alleges that U.S. Steel withdrew its contingent job offer because it

regarded him as disabled, and that it violated the medical examination and inquiry

provisions of the ADA. *Id.* at 7. The court will address each allegation in turn.

---

[3] Nevitt notes that while Dr. Szabo testified that utility technicians regularly lift objects weighing eighty to one hundred pounds, U.S. Steel managers testified that the job only requires lifting fifty pounds. Doc. 25 at 6. At any rate, fifty pounds is still significantly heavier than the twenty pound lifting restriction Dr. Szabo placed on Nevitt.

*A. Nevitt's failure-to-hire claim*

The purpose of the ADA is to "eliminat[e] . . . discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). "'[I]n this Circuit, the burden-shifting analysis of Title VII employment discrimination claims is applicable to ADA claims.'" *Dulaney v. Miami-Dade Cnty.*, 481 F. App'x 486, 489 (11th Cir. 2012) (quoting *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1255 (11th Cir. 2007)). "Under this burden-shifting analysis, the plaintiff must first establish a *prima facie* case of discrimination under the ADA by showing (1) he is disabled, (2) he is a qualified individual, and (3) he was subjected to unlawful discrimination because of his disability." *Id.* (citing *Holly*, 492 F.3d at 1255–56).

1. Disability

The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1). An individual is "regarded as" disabled "if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment . . . ."[4] 42 U.S.C. § 12102(3)(A). However, an individual will not be "regarded as"

---

[4] Until recently, the ADA required a plaintiff alleging a 'regarded as' claim to prove that the perceived impairment "substantially limited a major life activity." 42 U.S.C. § 12102(2) (2008), *amended by* ADA Amendments Act (ADAAA) of 2008, Pub. L. No. 110-325, 2008 Stat. 3406 (2008) (codified as amended at 42 U.S.C. §§ 12101–12102). The ADAAA explicitly

7

disabled based on an actual or perceived impairment that is "transitory and minor." 42 U.S.C. § 12102(3)(B). An impairment is "transitory" if its "actual or expected duration [is] 6 months or less." *Id*.

The parties are at odds regarding the proper inquiry for determining whether the 'transitory and minor' defense is available to U.S. Steel. Nevitt argues that the analysis centers on whether U.S. Steel *perceived* Nevitt's impairment to be 'transitory and minor.' Doc. 35 at 8. U.S. Steel counters that the inquiry is instead whether Nevitt's *actual* impairment was 'transitory and minor.' Doc. 38 at 5–6.

The ADA provides that either an actual or perceived impairment may give rise to a 'regarded as' disabled claim. 42 U.S.C. § 12102(3)(A). The court observes, however, that it is often the case that an actual impairment, insignificant though it may be, gives rise to a perceived impairment. The court has found little consistency or concrete guidance regarding the interplay between actual and perceived impairments from courts that have analyzed whether a 'transitory and minor' defense is available under such circumstances. Some courts have not only focused on the actual impairment, but have gone a step further and found that if a plaintiff suffers from an actual impairment lasting less than six months, he is barred from bringing a 'regarded as' disabled claim, regardless of how the covered

---

eliminated the substantial limitation requirement for 'regarded as' claims. *See* 42 U.S.C. § 12102(3)(A) (stating that an individual who is 'regarded as' disabled is considered disabled under the ADA, "whether or not the impairment limits or is perceived to limit a major life activity").

entity perceived the impairment. *See White v. Interstate Distrib. Co*, 438 F. App'x

415, 420 (6th Cir. 2011) (finding that "no matter what [the plaintiff] may be able

to prove about how [the defendant] perceived his physical condition . . . the ADA

explicitly states that the 'regarded as' definition 'shall not apply to impairments

that are transitory and minor. . . . There is no question that [the plaintiff's]

impairments are transitory, as his doctor expected his restrictions to be in effect for

only a month or two") (quoting 42 U.S.C. § 12102(3)(B)); *Valdez v. Minn.*

*Quarries, Inc.,* No. 12-CV-0801 (PJS/TNL), 2012 WL 6112846, at * 3 (D. Minn.

Dec. 10, 2012) (stating that "it is clear under the statute and the implementing

regulations that the Court must decide whether an impairment is 'transitory and

minor' on an objective basis. That question turns not on perception, but on

reality"); *Dugay v. Complete Skycap Servs*., No. CV-10-2404-PHX-GMS, 2011

WL 3159171, at *4 (D. Ariz. July 26, 2011) (finding that "the actual duration of

the [plaintiff's disability] was just over three months," and consequently transitory,

and that moreover, "even if [the] [p]laintiff had alleged . . . that [the defendant]

regarded him as disabled for a longer period, the statute provides an absolute bar

to disability status for 'regarded as' impairments of six months or less, regardless

of employer perceptions"). Others courts have looked to defendants' perception of

plaintiffs' impairments. *See Gecewicz v. Henry Ford Macomb Hosp. Corp.*, 683 F.

3d. 316, 322–23 (6th Cir. 2012) (rejecting the plaintiff's 'regarded as' disabled

claim because there was insufficient evidence to support a claim that the defendant perceived the plaintiff as suffering from an impairment lasting longer than six months); *Bailey v. Real Time Staffing Servs., Inc.*, 927 F. Supp. 2d 490, 506 (E.D. Tenn. 2012) (stating that "to establish a prima facie case of disability discrimination, the plaintiff must prove that he was perceived as having an impairment that was not transitory or minor"); *Saley v. Carney Fork, LLC*, 886 F. Supp. 2d 837, 851–52 (M.D.Tenn. 2012) (finding that "even if Plaintiff's *actual* impairment were 'transitory and minor,' he has produced sufficient evidence showing a genuine dispute of material fact as to whether his *perceived* impairment was transitory and minor") (emphasis in original); *Davis v. Vt. Dep't of Corr.*, 868 F. Supp. 2d 313, 327 (D. Vt. 2012) (refusing to apply the 'transitory and minor' defense at the 12(b)(6) stage because "the allegations suggest that the perceived impairment, if not the actual impairment, lasted longer than six months").

The court notes that in situations where a plaintiff claims his actual impairment caused a covered entity to regard him as disabled, it is certainly proper for courts to evaluate whether the actual impairment is 'transitory and minor.' *See e.g.*, *Cobb v. Florence City Bd. of Educ.*, CV-11-CLS-4132-NE, 2013 WL 5295777 at *10 (N.D. Ala. Sept. 18, 2013) (concluding that although the plaintiff "assert[ed] that [the defendant] regarded him as being disabled because of his knee problems . . . [t]he only knee-related problem [the] plaintiff suffered while

employed by the [defendant] was an orthoscopic procedure . . . . [that caused him to be] out of work for approximately three months," and that consequently the impairment was 'transitory and minor'); *Selkow v. 7-Eleven*, No 8:11-cv-456-T-33EAJ, 2012 WL 2054872, at *12 (M.D. Fla. June 7, 2012) (concluding that the plaintiff's impairment was transitory because it was, by her own admission, "caused solely by her pregnancy and manifested when she was five months pregnant . . . [and therefore] could not last another six months from the time the impairment began"). But assessing whether a plaintiff's actual impairment is transitory and minor when a covered entity's perception of a plaintiff's actual impairment differs from the actual impairment, and it is the incorrect perception of the impairment that leads the covered entity to regard the plaintiff as disabled would render the perceived impairment prong of § 12102(A) meaningless in all but the rare scenario where a perceived perception has no basis in reality. Such a result flies in the face of the EEOC's Interpretive Guidance to the ADA, which clearly indicates the drafters of the original ADA understood that:

> unfounded concerns, mistaken beliefs, fears, myths, or prejudice about disabilities are often just as disabling as actual impairments, and . . . corresponding[ly] desire[d] to prohibit discrimination founded on such perceptions. In passing the original ADA, Congress relied extensively on the reasoning of *School Board of Nassau County v. Arline* that the negative reactions of others are just as disabling as the actual impact of an impairment. The ADAAA reiterates Congress's reliance on the broad views enunciated in that decision, and Congress believe[s] that courts should continue to rely on this standard. Accordingly, the ADA Amendments Act *broadened* the application of the "regarded as" prong of the definition of

disability.

Appendix to Part 1630—Interpretive Guidance on Title I of the Americans with

Disability Act, 29 C.F.R. pt. 1630 App. § 1630.2(l) (emphasis added) (citations

omitted) (internal quotation marks omitted).[5]

In advancing its argument, U.S. Steel notes that the implementing

regulations indicate "[w]hether the impairment at issue is or would be 'transitory

and minor' is to be determined objectively." Doc. 38 at 6 (quoting 29 C.F.R. §

1630.15(f)). The court acknowledges that this instruction injects some confusion

into the assessment of perceived impairments, because while an actual injury can

be objectively evaluated, *see Black's Law Dictionary* (9th ed. 2009) (defining

'objective' as "[o]f, relating to, or based on externally verifiable phenomena, as

opposed to an individual's perceptions, feelings, or intentions"), a perception is

inherently subjective, *see id*. (defining 'subjective' as "[b]ased on an individual's

perceptions, feelings, or intentions, as opposed to externally verifiable

phenomena," and a 'perception' as "[a]n observation, awareness, or realization,

usu[ally] based on physical sensation or experience; appreciation or cognition. The

term includes both the actor's knowledge of the actual circumstances and the

actor's erroneous but reasonable belief in the existence of nonexistent

---

[5] "[A]lthough administrative interpretations of an Act by its enforcing agency are not controlling, they 'do constitute a body of experience and informed judgment to which [courts] may properly resort for guidance.'"*Harrison v. Benchmark Elecs. Huntsville, Inc.*, 593 F.3d 1206, 1214 (11th Cir. 2010) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)).

circumstances"). U.S. Steel's filing at least implicitly argues that because the

regulations demand an objective analysis, perceptions, which are inherently

subjective, cannot be evaluated to determine whether they are transitory and

minor. Taken to its logical extreme, U.S. Steel's contention is basically that

improper perceptions that lead to discriminatory conduct should not matter

precisely because they have no basis in fact. However, when the regulation's

instruction regarding objectivity is viewed in context, it becomes clear that U.S.

Steel's reading is overly broad:

> Whether the impairment at issue is or would be "transitory and minor" is to be determined objectively. A covered entity may not defeat "regarded as" coverage of an individual simply by demonstrating that it subjectively believed the impairment was transitory and minor; rather, the covered entity must demonstrate that the impairment is (in the case of an actual impairment) or would be (in the case of a perceived impairment) both transitory and minor.

29 C.F.R. 1630.15(f). First, not only does the regulation contemplate the objective

assessment of a perception, it contains explicit instructions for conducting that

assessment: a covered entity must demonstrate that were the perceived impairment

an actual impairment, it would be both 'transitory and minor.' *Id.* Second, the

regulation's statement regarding an objective determination is followed by a

description of the specific kind of subjective determination the EEOC deems

impermissible, namely that a covered entity may not avail itself of the 'transitory

and minor' defense by merely claiming it subjectively believed an impairment was

'transitory and minor.' When viewed alongside this example, it becomes clear that the purpose of the regulation's language regarding objective determinations is to close a loophole that, if left unchecked, would make it virtually impossible for a plaintiff mounting a 'regarded as' claim to rebut a 'transitory and minor' defense because a defendant could raise the defense based entirely on its own supposed perception. Consequently, 29 C.F.R. § 1630.15(f) does not provide support for U.S. Steel's contention that the court should determine whether Nevitt's actual impairment was 'transitory and minor' instead of whether U.S. Steel perceived he suffered from an impairment that was 'transitory and minor.'

Finally, the EEOC's interpretive guidance explicitly indicates how a court should proceed when an actual impairment and a perceived impairment differ:

> an employer that terminated an employee with an objectively "transitory and minor" hand wound, mistakenly believing it to be symptomatic of HIV infection, will nevertheless have "regarded" the employee as an individual with a disability, since the covered entity took a prohibited employment action based on a perceived impairment (HIV infection) that is not "transitory and minor."

29 C.F.R. pt. 1630 App. § 1630.2(l). Were the court to follow the approach advanced by U.S. Steel, the employee in this example would not be 'regarded as' disabled because the actual injury in question was 'transitory and minor.' That is not the result contemplated by the EEOC. To the contrary, the EEOC interpretive guidance clearly indicates that when a perception gives rise to a 'regarded as' claim, courts should determine whether the perceived impairment is 'transitory

14

and minor,' even if the perception is based on an actual injury that is objectively 'transitory and minor.'

In sum, while some courts have viewed a covered entity's perception of an impairment as irrelevant if an actual impairment gave rise to the perception, U.S. Steel has not presented this court with any binding authority compelling it to follow suit. Moreover, the court finds that such an approach is unsupported by the regulations and contradicts the intention of the ADA and ADAAA's drafters as well as the approach advocated by the EEOC. Consequently, the court's next step is to determine whether U.S. Steel perceived Nevitt as suffering from an impairment that was 'transitory and minor.'

U.S. Steel indisputably perceived that Nevitt suffered from an impairment that was not 'transitory and minor.' As explained above, an impairment is 'transitory' if its "actual or expected duration [is] 6 months or less." 42 U.S.C. § 12102(3)(B). U.S. Steel does not dispute that at some point between August 26, 2011, when U.S. Steel requested additional medical records from Nevitt regarding his physical condition, *see* doc. 30 at 6, and September 15, 2011, when U.S. Steel revoked its contingent offer of employment, Dr. Szabo concluded that unless U.S. Steel placed Nevitt under significant restrictions, Nevitt would be unable to perform the duties of a utility technician without endangering himself or others, *id.* at 10, because of the injuries he sustained at the beginning of January 2011, *id.* at

7. In other words, Dr. Szabo perceived Nevitt as continuing to be impaired by his injuries well over six months after they occurred, and U.S. Steel adopted that perception when it withdrew its contingent offer based on Dr. Szabo's findings. *Id*. at 10. Because Dr. Szabo and U.S. Steel perceived Nevitt as suffering from an impairment that lasted more than six months, they perceived him as suffering from an impairment that was not transitory. Consequently, the 'transitory and minor' defense is not available to U.S. Steel, and Nevitt has established a prima facie case that U.S. Steel regarded him as disabled, and therefore a prima facie case that he was disabled for the purposes of the ADA.

Moreover, even if the court conducted the 'transitory and minor' analysis advocated by U.S. Steel, summary judgment would be improper because there is a genuine issue of material fact regarding whether Nevitt's actual impairment was 'transitory *and* minor.'[6] Nevitt concedes that his actual impairment resolved less

---

[6] U.S. Steel notes that "[w]hile 'transitory' is defined . . . at 42 U.S.C. § 12102(3) and further explained by 29 C.F.R. §1630.15(f), neither the statute nor any regulation defines 'minor,'" and that "[a] number of courts have combined 'transitory and minor,' inferring that a transitory impairment (less than 6 months) is ipso facto a minor impairment." Doc. 30 at 16 n. 3 (citing *Cobb*, 2013 WL 5295777, at *10; *Selkow*, 2012 WL 2054872, at *15; *Dugay*, 2011 WL 3159171). The court declines to follow suit, as doing so would ignore the plain language of the statute, which states that an individual will not be "regarded as" disabled based on an impairment that is "transitory *and* minor," 42 U.S.C. 12102(3)(B) (emphasis added), and the EEOC interpretive guidance, which notes that "the regulations provide an exception to coverage under the 'regarded as' prong where the impairment on which a prohibited action is based is *both* transitory . . . and minor," 29 C.F.R. Pt. 1630 App., § 1630.2(l) (emphasis added). Additionally, while the court agrees with U.S. Steel that the statute and regulations do not define 'minor,' the interpretive guidance does note that absent the 'transitory and minor' defense, the 'regarded as' prong of the ADA's definition of disability "would have covered individuals who are regarded as having common ailments like the cold or flu, and this exception responds to concerns . . .

than six months after the accident. Doc. 35 at 11. Therefore, it is undisputed that

Nevitt's actual injury was transitory.[7] A fact-finder could agree with U.S. Steel

that Nevitt's impairment was also minor because it did not cause him to miss

work, by May 2011 he was no longer subject to work restrictions because of his

condition, he sought no further medical treatment for his condition after Dr.

Cordover examined him on May 27, 2011, and by his own account, his pain

resolved by June 2011. Doc. 30 at 14; *id*. at n. 2. But, a fact finder could also

conclude that Nevitt's account of back pain that lasted for almost six months, *id*. at

14, combined with the treatment he received for his condition, which included two

epidural steroid injections, prescribed narcotics and muscle relaxers, physical

therapy, and the use of a TENS unit, doc. 35 at 6, indicates that his impairment

was far more serious than "common ailments like the cold or flu" that the EEOC

considers a proper basis for a 'transitory and minor' defense. 29 C.F.R. Pt. 1630

App., § 1630.2(1). As with much of the remaining matters in this case, the

---

regarding potential abuse of this provision and misapplication of resources on individuals with minor ailments that last only a short period of time," *id*. (citation omitted), which gives some indication of what types of impairments the EEOC considers 'minor.'

    [7] Nevitt argues that although he concedes his injury resolved within six months, his impairment should not be treated as transitory because, according to Dr. Szabo, his "injury was subject to aggravation and exacerbation in the future." Doc. 35 at 11. The cases Nevitt cites in support of this argument do not stand for the proposition that the possibility of future recurrence renders an impairment non-transitory. In *Ruggles v. Va. Linen Serv.*, the plaintiff had been "diagnosed [with] a permanent degenerative condition." No. 6:12-cv-00064, 2013 WL 4678408, at *6 n. 12 (W.D. Va. Aug. 30, 2013). In *Cohen v. CHLN, Inc.*, the "[p]lantiff offer[ed] significant evidence that he was perceived to have a severe, on-going impairment." Civil Action No. 10-00514, 2011 WL 2713737, at *8 (E.D. Pa. July 13, 2011).

question largely hinges on Nevitt's credibility, which is not a matter the court may properly evaluate at this juncture. *See Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1315 (11th Cir. 2007) (stating that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Consequently, regardless of whether the court assesses if Nevitt's actual impairment was 'transitory and minor' or if U.S. Steel perceived it to be 'transitory and minor,' U.S. Steel is not entitled to summary judgment based on its argument that Nevitt has failed to present a prima facie case that he was disabled.

## 2. Qualified Individual

In addition to showing that he is disabled, to establish a prima facie case of discrimination under the ADA, a plaintiff must show he is a qualified individual. *Dulaney*, 481 F. App'x at 489 (citing *Holly*, 492 F.3d at 1255–56). A qualified individual is one "who, with or without reasonable accommodations can perform the essential functions of the position that such individual holds or desires." 42 U.S.C. § 12111(8).

A disabled individual cannot be qualified for a specific job if he poses a "direct threat" to the health or safety of himself or others that cannot be eliminated by reasonable accommodations. 42 U.S.C. §12111(3); *see also Pinckney v. Potter*,

186 F. App'x 919, 925 (11th Cir. 2006). The ADA defines a "direct threat" as a "significant risk to the health or safety of others that cannot be eliminated by reasonable accommodations." 42 U.S.C. § 12111(3). Pertinent regulations extend "the definition of 'direct threat' to include threats to the worker himself." *Pinckney*, 186 F. App'x at 925 (citing 29 C.F.R. § 1630.2(r); *Chevron U.S.A., Inc. v. Echazabal*, 536 U.S. 73, 87 (2002) (upholding 29 C.F.R. § 1630.2(r)).

Whether Nevitt posed a 'direct threat,' as U.S. Steel contends, doc. 30 at 19–20, presents a question of material fact. On one hand, Nevitt contends that by June 2011, he no longer experienced back pain associated with his injury, doc. 30, ex. A at 192, (a contention U.S. Steel relies upon when arguing that Nevitt's injury was 'transitory and minor,' doc. 30 at 14), that he was healthy when he applied for the position with U.S. Steel, doc. 30, ex. A at 193, and that the restrictions imposed by Dr. Szabo were unnecessary to ensure his safety, *id.* at 270. Additionally, the pre-employment physical examination conducted by U.S. Steel yielded normal results, and Dr. Szabo formulated her restrictions based on medical records that contained conflicting opinions regarding whether Nevitt needed to perform his former job at Cascades Sonoco under restrictions and that could be construed as stale.  On the other, Nevitt's condition had not improved between his initial injury in January 2011 and when he saw Dr. Poczatek and Dr. Cordover in May 2011, as he continued to complain of back pain, and in the absence of any

19

documentation indicating otherwise, a fact finder could reasonably conclude his condition did not improve between May 2011 and when he applied for a position with U.S. Steel in August 2011. While Nevitt's U.S. Steel pre-employment physical examination yielded normal results, Dr. Poczatek and Dr. Cordover also conducted physical examinations of Nevitt when determining if he should work under restrictions at Cascades Sonoco, and those examinations also yielded essentially normal results, in spite of Nevitt's continued complaints of back pain. Doc. 26-3 at 71. Moreover, as Dr. Szabo noted during her deposition, "people never come into a pre employment physical complaining of pain." Doc. 26-3 at 148–49. Finally, although Dr. Cordover determined that Nevitt could perform his job at Cascades Sonoco without restrictions, a reasonable fact finder could conclude that Dr. Cordover's determination does not bear on whether Nevitt could safely perform a different job at a different plant. In sum, determining whether Nevitt posed a 'direct threat' hinges on an assessment of his credibility and the weighing of the evidence, which are determinations reserved to a jury. *See Allen*, 495 F.3d at 1315 (quoting *Anderson*, 477 U.S. at 255).

Because the briefing and evidentiary submissions indicate there is a question of material fact regarding whether Nevitt was a qualified individual, granting summary judgment to either party on Nevitt's failure-to-hire claim is improper. *See Pinckney*, 186 F. App'x at 926 (finding summary judgment was

improper when "factual questions remained as to whether [the plaintiff] was a qualified individual") (internal quotation marks omitted). Therefore, Nevitt's motion for partial summary judgment is denied and U.S. Steel's motion for summary judgment as to count I of the amended complaint is denied.

### B. Nevitt's medical examination and inquiry claim

Nevitt alleges in count II that U.S. Steel violated the medical examination and inquiry section of the ADA. Specifically, Nevitt claims that U.S. Steel "refused to hire [Nevitt] because of out-dated and inapplicable medical information," which U.S. Steel "improperly used to screen out [Nevitt]" based on criteria that "was not job-related and consistent with business necessity." Doc. 4 at 7.

As a preliminary matter, U.S. Steel contends that it is entitled to summary judgment on Nevitt's medical examination and inquiry claim because Nevitt failed to file an EEOC charge of such a violation. Doc. 30 at 22. Although EEOC charges are not subject to strict interpretation, "a 'plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (quoting *Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000)). Nevitt's EEOC charge reads as follows:

> Around the middle of August 2011, I applied for a utility man position with [U.S. Steel]. I received three interviews and was offered the position around the end of August 2011, pending a physical exam with the company physician. During the exam, I informed Dr. Larry Anthony that I had been previously treated for a disability as defined in the Americans with Disabilities Act. Dr. Anthony instructed me to provide a physician's release attesting to my ability to perform the essential functions of the job. I did as instructed. However, shortly after providing the doctor's release, the recruiting department sent me an email stating that I did not meet the physical requirements for the utility man position, and, therefore, they were rescinding the job offer. I believe I was discriminated against and regarded as disabled, in violation of the Americans with Disabilities Act of 1990, as amended.

Doc. 29-1, ex. 16. In sum, Nevitt's EEOC charge states that U.S. Steel discriminated against him after he provided U.S. Steel with medical records and underwent a physical examination. The court finds this sufficient to set forth a claim that U.S. Steel violated the ADA's medical examination and inquiry provisions, or, at a bare minimum, that in the course of investigating Nevitt's discrimination claim, an EEOC investigation would encompass a medical examination and inquiry claim. Consequently, U.S. Steel's argument regarding Nevitt's EEOC charge is unconvincing.

Turning to the substance of the medical examination and inquiry claim, the ADA's examination and inquiry provisions state that:

> A covered entity may require a medical examination after an offer of employment has been made to a job applicant and prior to the commencement of employment duties of such applicant, and may condition an offer of employment on the results of such examination if–
> . . .
> (C) the results of such examination are used only in accordance with

this subchapter.

42 U.S.C. § 12112(d)(3).[8]

The parties agree that the question of whether U.S. Steel improperly used

Nevitt's medical information hinges on whether U.S. Steel "made a reasonably

informed and considered decision" before withdrawing its conditional offer. *See*

doc. 30 at 24; doc. 35 at 21 (each quoting *Lowe v. Ala. Power Co.*, 244 F.3d 1305,

1308 (11th Cir. 2011). Here, Dr. Szabo reviewed two medical reports and

discounted the report prepared by Dr. Cordover because it appeared to be the

result of a one-time-visit. Doc. 26-3 at 76. She relied upon the report prepared by

Dr. Poczatek because it appeared he was Nevitt's treating physician, and applied

the restrictions he imposed because the report contained no indication that Dr.

Poczatek intended them to be temporary. *Id.* Consequently, Dr. Szabo's decision,

which she based on the materials provided to her by Nevitt, is distinguishable from

---

[8] Additionally, 29 C.F.R. § 1630.14(b)(3) provides that "if certain criteria are used to screen out an employee or employees with disabilities as a result of such an examination or inquiry, the exclusionary criteria must be job-related and consistent with business necessity." The criteria U.S. Steel relied upon when it revoked Nevitt's conditional offer was job-related and consistent with business necessity. Nevitt contends that Dr. Szabo placed restrictions on him because she believed he would injure himself in the future, not because she believed he was presently unable to perform the functions of a utility technician, and that such a belief is an insufficient basis for concluding that Nevitt was a 'direct threat.' Doc. 25 at 15–16. However, Dr. Szabo repeatedly testified that she placed restrictions on Nevitt because she did not believe he could perform the heavy labor required of a utility technician based on his injury. *See* Doc. 25-3 at 44, 46-47, 97, 99, 115, 139. Whether an employee can safely execute his duties is clearly job-related criteria and consistent with business necessity. *C.f. Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 960 (10th Cir. 2002) (upholding a jury verdict finding that "unsubstantiated speculation about future risks from a perceived injury" was not a job-related criteria).

the examples of unreasonable decisions cited by Nevitt, which were based upon stereotypes and generalizations. *See* doc. 35 at 21–22 (citing *Lowe*, 244 F.3d at 1309 (finding that a doctor's decision was improperly based, in part on his "assumption that all double amputees have the same limitations"); *Wysong v. Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 31 (1st Cir. 2002) (fact question existed as to whether an employer "based its decision on a stereotype about one-handed persons")). While Nevitt is correct that Dr. Szabo *could* have requested that Nevitt undergo further testing, he cites no authority indicating that she was required to do so in order to make a reasonably informed and considered decision. *C.f. Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998) (noting that "[i]n deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action"); *see also Solorio v. Am. Airlines, Inc.*, No. 00-3780-CIV, 2002 WL 485284, at *6 (S.D. Fla. Feb. 28, 2002) (noting that "[a]n employer complies with the ADA when it bases its employment decision on objective, reliable evidence of the applicant's work restrictions (*i.e. the medical opinion of the applicant's own doctor*") (emphasis added)).

Similarly, Nevitt provides the court with no legal basis for finding that Dr.

24

Szabo based her decision on stale information. The regulations require that a covered entity's assessment of whether an individual poses a 'direct threat' "shall be based on a reasonable medical judgment that relied on the most current medical knowledge and/or the best available objective evidence." *Lowe*, 244 F.3d at 1308 (quoting 29 C.F.R. 1630.2(r)). In *Lowe*, the Eleventh Circuit held that the defendant's determination that the plaintiff was a 'direct threat' "was not based . . . on particularized facts using the best available objective evidence as required by the regulations" in part because it was based on restrictions a doctor employed by the defendant formulated nine months after the doctor performed a "cursory" examination of the plaintiff and an additional eight months passed before the defendant based its decision that the plaintiff would be a 'direct threat' on the restrictions. *Id.* at 1309. The roughly three-month interval between Dr. Poczatek and Dr. Cordover's evaluations and when Dr. Szabo imposed restrictions on Nevitt is not long enough to compel the court to make a similar determination on the medical examination and inquiry claim.

Based on the facts discussed above, Nevitt has failed to show that Dr. Szabo made an unreasonably informed and ill-considered decision. That U.S. Steel may have been wrong in concluding that Nevitt posed a direct threat as it relates to the failure to hire claim does not mean that it failed to reach a reasonably informed decision in the context of the medical examination and inquiry claim. *See Solorio*,

2002 WL 485284, at *6.

Because Nevitt has failed to produce evidence indicating that U.S. Steel's decision to revoke its conditional offer was not based on a reasonably informed and considered decision, he has failed to meet his burden on the medical examination and inquiry claim. Consequently, U.S. Steel's motion for summary judgment as to count II of the amended complaint is granted.

## IV. CONCLUSION

For the reasons stated above, because there is a question of material fact regarding whether Nevitt was a qualified individual with a disability, Nevitt's motion for partial summary judgment and U.S. Steel's motion for summary judgment as to count I of the amended complaint are denied. However, because Nevitt fails to meet his burden as to his medical examination and inquiry claim, U.S. Steel's motion to dismiss count II of the amended complaint is granted. The court will enter a separate order consistent with this opinion.

**DONE** this 5th day of May, 2014.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE